In the Matter of the Claims of FRED BAIRD et al., Respondents, against NEW YORK CENTRAL RAILROAD COMPANY, Appellant. WORKMEN'S COMPENSATION BOARD, Respondent.

In the Matter of the Claims of LOUIS CHRISTO et al., Respondents, against NEW YORK CENTRAL RAILROAD COMPANY, Appellant. WORKMEN'S COMPENSATION BOARD, Respondent.

Argued April 20, 1949; decided May 26, 1949.

*Sherman A. Murphy, Jr.,* for appellant. I. Claimants' duties were in furtherance of interstate commerce and the Workmen's Compensation Board, therefore, had no jurisdiction of their claims. (*Matter of Assmann* v. *Long Island R. R. Co.,* 269 App. Div. 871; *Shelton* v. *Thomson,* 148 F. 2d 1; *Great Northern* v. *Industrial Comm.,* 245 Wis. 375.) II. Claimants were engaged in work in furtherance of interstate commerce because a great majority of the locomotives repaired at West Albany come out of and return to interstate service. (*Matter of Wright* v. *New York Central R. R. Co.,* 263 App. Div. 461, 288 N. Y. 719, 317 U. S. 668; *Matter of McGowan* v. *New York Central R. R. Co.,* 265 App. Div. 272, 290 N. Y. 889; *Edwards* v. *Baltimore & Ohio R. R. Co.,* 131 F. 2d 366; *Bretsky* v. *Lehigh Valley R. R. Co.,* 156 F. 2d 594; *Shelton* v. *Thomson,* 148 F. 2d 1; *Zimmerman* v. *Scandrett,* 57 F. Supp. 799; *Ermin* v. *Pennsylvania R. R. Co.,* 36 F. Supp. 936; *Trucco* v. *Erie R. R. Co.,* 353 Pa. 320, 328 U. S. 843.) III. The Federal act alone determines the rights and liabilities of the parties. (*New York Central R. R. Co.* v. *Winfield,* 244 U. S. 147; *Erie R. R. Co.* v. *Winfield,* 244 U. S. 170.)

*Nathaniel L. Goldstein, Attorney-General* (*Roy Wiedersum, Wendell P. Brown* and *Harry Pastor* of counsel), for Workmen's Compensation Board, respondent. Jurisdiction over the claims of the three employees was vested in the Workmen's Compensation Board. The provisions of the 1939 amendment of the Employers' Liability Act were inapplicable. (*Shanks* v. *Delaware, L. & W. R. R. Co.,* 239 U. S. 556; *Matter of McGowan* v. *New York Central R. R. Co.,* 290 N. Y. 889; *New York, N. H. & H. R. R. Co.* v. *Benzue,* 284 U. S. 415; *Matter of Zmuda* v. *Delaware, L. & W. R. R. Co.,* 268 N. Y. 659, 297 U. S. 707; *Matter of White* v. *Lehigh Valley R. R. Co.,* 251 App. Div. 507; *Leslie* v. *Long Island R. R. Co.,* 248 N. Y. 511; *Matter of La Point* v. *New York Central R. R. Co.,* 254 App. Div. 711; *Chicago & North Western Ry. Co.* v. *Bolle,* 284 U. S. 74; *Fluitt* v. *New Orleans T. & M. Ry. Co.,* 169 So. 803 [La.].)

DESMOND, J. Each of the above-named claimants-respondents has been awarded workmen's compensation under the New York act, by reason of accidental injuries sustained in the course of employment (claimant Mrs. Derwing succeeds to the right of her husband, now dead). The sole question on this appeal is: did the work of these men when injured bring them under the New York Workmen's Compensation Law, or, as appellant argues, under the Federal Employers' Liability Act, as amended in 1939 (U. S. Code, tit. 45, § 51)? Jurisdiction is, of course, exclusively in one or the other (*New York Central R. R. Co. v. Winfield,* 244 U. S. 147).

Each of the injured men, at the time of his accidental injury, was employed as a repairman at the " West Albany shops " of appellant New York Central Railroad. New York Central is a common carrier by rail, operating both interstate and intrastate trains, its lines extending into various States of the Union and into parts of Canada. So much of the New York Central system as is east of Buffalo is referred to as " the lines east ", and these lines provide service to and from four States, including New York, and two provinces of the Dominion of Canada. The only facility which the railroad has for servicing and repairing steam engines on its " lines east " is its " West Albany shops " and it was there that each of these men received his injury. All sorts of repairs are there made to locomotives and cranes. All of the locomotives, which from time to time come to the West Albany shops for repair, are engaged at some time or other in interstate commerce, and most of them come into the shop from interstate transportation, and, eventually, return thereto. While awaiting repairs, while undergoing repairs, and while awaiting reassignment after repairs, the locomotives are completely disabled, unassigned and without power, for periods varying from fifteen days to two months or more, in some instances being stored in the shops for weeks or months before being put back into service. All this amounts to what is called " back shop repairs " and all these men were " back shop workers " — that is, their jobs had to do with instrumentalities completely withdrawn from service. All the injured employees were craftsmen working at their respective trades, on the locomotives themselves or their tenders, except Baird who ran, and kept in repair, a forging machine for turning out small parts for locomotives, and

Lester, who was a maintenance man on the shop's electrical equipment. These workmen's compensation awards cannot, of course, stand if the claimants were, at the time, employed in interstate commerce within the meaning of the appropriate Federal statute (*New York Central R. R. Co.* v. *Winfield, supra*).

It is clear that the awards here appealed from would have been proper before the Federal Employers' Liability Act was amended in 1939 (see *Matter of McGowan* v. *New York Central R. R. Co.*, 290 N. Y. 889, decided in this court in 1943, but involving an occurrence in 1930). Before 1939, the Federal act (U. S. Code, tit. 45, § 51) stated its own coverage as follows: " Every common carrier * * * while engaging in commerce between any of the several States * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce ". While the statute contained that language, the courts evolved and applied the so-called " pin-point rule ", holding that, to recover under the Federal law, an employee had to be engaged at the very time of the accident in interstate commerce, that is, he must have been " at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it " (*Shanks* v. *Delaware, Lackawanna & Western R. R. Co.*, 239 U. S. 556, 558, affg. 214 N. Y. 413). The requirement that there had to be proven either actual interstate transportation, or work most closely connected with it, resulted in the further holding (before 1939) that one who was hurt on a locomotive withdrawn from service for repairs, could not recover under the Federal Employers' Liability Act, since the instrumentality on which the work was being done had nothing to do, at the time, with interstate transportation (*Matter of McGowan* v. *New York Central R. R. Co.*, supra; *Matter of Zmuda* v. *Delaware, Lackawanna & Western R. R. Co.*, 268 N. Y. 659, certiorari denied 297 U. S. 707; *New York, New Haven & Hartford R. R. Co.* v. *Bezue*, 284 U. S. 415).

In 1939, however, Congress added this new second paragraph to the statute, in the form of a definition of a covered " employee ": " Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for

the purposes of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter.'' Paraphrased, that says that the act's coverage is now to include all an interstate carrier's employees, any part of whose duties '' further '' interstate commerce or '' directly '' or '' closely and substantially '' affect such commerce. If we had nothing before us but the (quite clear and unambiguous) language of that 1939 amendment, our problem here would not be a difficult one. Reading that language apart from legislative and judicial history, we would have to say that the activities of each of the workers whose claims are here involved did '' further '' interstate commerce, and certainly affected it '' closely and substantially '', since it is undisputed that the everyday operation of this railroad requires that these car repair shops be busy repairing appellant's locomotives. But the new 1939 language cannot, of course, be read off by itself. We know, from the decisions above cited and many others, that the amendment was enacted in the light of two limiting rules of the cases: one, the so-called '' pin-point rule '' forbidding recovery unless the work was interstate transportation or very closely connected therewith at the very time of the accident, and, second, the so-called '' back shop '' rule which said that '' dead engines '' in the course of repair were not instrumentalities of interstate transportation. What we must now discover is whether the Congress, by its 1939 enactment, did deal with both of those rules, and if so, to what extent. It is clear enough that the '' pin-point rule '' was completely wiped out, and so we have held in *Matter of Wright* v. *New York Central R. R. Co.* (288 N. Y. 719, certiorari denied 317 U. S. 668). Wright's duties were such that for five days each week he was a boiler repairman and on the sixth day he was a boiler inspector; it was conceded that his boiler inspection work was performed in furtherance of interstate commerce, but he was hurt on one of the days when he was repairing boilers. We held that the abolition of the '' pin-point rule '', by the 1939 statutory change, had made immaterial what Wright was doing at the particular time of his mishap. Accordingly, it was not necessary in the *Wright* case (*supra*) for us to decide the question we have before us here, that is, whether the repair of a locomotive ordinarily used in, but presently withdrawn from, interstate transportation brings the worker under the amended law.

The report of the Senate Judiciary Committee recommending the 1939 amendment (Senate Reports, 76th Cong., 1st Sess., Report No. 661), stated plainly: " This amendment is intended to broaden the scope of the Employers' Liability Act so as to include within its provisions employees of common carriers who, while ordinarily engaged in the transportation of interstate commerce, may be, at the time of injury, temporarily divorced therefrom and engaged in intrastate operations." That Senate report cited the *Shanks* case (*supra*), and described the difficulties which had been previously encountered in answering the. then controlling question as to whether an injured man, at the particular moment when hurt was or was not in interstate commerce. The report referred to the well known fact that railroad men were frequently injured while working on cars or engines temporarily withdrawn from interstate commerce and which were, just before or after the occurrence, used in such commerce. The committee noted that the preponderance of service performed by railroad employees is interstate commerce, and included in its report the following statement: " The adoption of the proposed amendment will, to a very large extent, eliminate the necessity of determining whether an employee, at the very instant of his injury or death was actually engaged in the movement of interstate traffic. If any part of the employee's duties (at the time of his injury or death) directly, closely, or substantially affected interstate or foreign commerce, the claimant would be considered entitled to the benefits of the act." That is a plain statement that the " pin-point rule " was being thrown into the discard, but there is no equally plain indication as to whether other borderline cases, such as those of " back shop employees ", were being considered and dealt with. Our own conclusion is that Congress did two things: first, it abolished the requirement of proof that at the instant of injury the worker was engaged in interstate transportation or work so closely connected therewith as to be practically part of it, but, in addition it did something further. We think the amendment broadened the whole concept of interstate transportation as covered by the Federal Employers' Liability Act. Having determined that it should not thereafter be necessary, for coverage under the Federal act, to prove interstate transportation or closely related work as of the particular time of the injury, Congress stated a new, much broader test of

what should thereafter be considered to be interstate commerce within the act. It extended the protection of the act not only to every one of an interstate carrier's employees any part of whose duties consisted of a furthering of interstate commerce, but it used this significantly sweeping language: " or shall, in any way directly or closely and substantially, affect such commerce as above set forth ".

The exact question as to whether the " back shop " rule was wiped out along with the " pin-point " rule has not been answered in any controlling case but, as to the clear trend of decision in the Federal courts of appeal and State courts of last resort, see *Shelton* v. *Thomson* (148 F. 2d 1); *Bretsky* v. *Lehigh Valley R. R. Co.* (156 F. 2d 594); *Skidmore* v. *Baltimore & Ohio R. R. Co.* (167 F. 2d 54); *Trucco* v. *Erie R. R. Co.* (353 Pa. 320); *Great Northern Ry. Co.* v. *Industrial Comm.* (245 Wis. 375); *Maxie* v. *Gulf, Mobile & Ohio R. R. Co.* (356 Mo. 633); *Harris* v. *Missouri Pacific R. R. Co.* (158 Kan. 679). The usual aids to construction are not here helpful. As a practical matter we are left with nothing but the language of the amendment itself. That language, at the point where it makes it sufficient for coverage that any part of the employee's duties shall be the furtherance of interstate commerce or shall " in any way directly or closely and substantially, affect such commerce " necessarily, we conclude, covers the situations of each of employees of appellant whose claims for New York State compensation are here before us. It follows, as we believe, that Congress, within its powers, has enacted that the sole remedy of each of those respondents is under the Federal Employers' Liability Act. We agree, therefore, with the dissenting opinion in the Appellate Division, that the conclusion of the Workmen's Compensation Board, that no part of the duties of any of these claimants was in furtherance of interstate commerce, was as matter of law, erroneous as to each such claimant. Consequently, the awards cannot stand.

In each case the order of the Appellate Division should be reversed and the claims dismissed, without costs.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DYE, FULD and BROMLEY, JJ., concur.

Orders reversed, etc.