JUANA CRUZ GONZÁLEZ, Plaintiff and Appellant, *v.* WATER RESOURCES AUTHORITY OF PUERTO RICO and MARYLAND CASUALTY COMPANY, Defendants and Appellees.

No. 11008. Argued March 5, 1954.—Decided April 13, 1954.

*Carlos E. Colón Cordero* and *Antonio Zapater Cajigas* for appellant. *F. Fernández Cuyar* and *Rafael A. González* for appellees.

MR. CHIEF JUSTICE SNYDER delivered the opinion of the Court.

On March 19, 1951 the plaintiff sued the defendants in the Superior Court for damages of $25,000 for the death of her child. In the same suit she also prayed that a release which she had signed therefor be declared void. After a trial on the merits, the lower court held that the release was valid and entered a judgment in favor of the defendants.

The findings of fact of the trial court were as follows:

"1.—On October 19, 1950, about 8:45 a.m., the minor Daisy Pagán Cruz, legitimate daughter of the plaintiff, with whom she lived, was struck and killed by a Dodge truck, license No. H–80195, belonging to the defendant, Water Resources Authority of Puerto Rico, while the said vehicle was being driven at a high speed by an employee of the said defendant, in the course of his employment, without taking due precautions to avoid the said lamentable accident, which occurred on a public highway in the municipality of Jayuya, Puerto Rico.

"2.—Five or six days after the occurrence of the said accident, Mr. Oscar Álvarez Torres, adjuster of the codefendant Maryland Casualty Co., insurer of the defendant Water Resources Authority of Puerto Rico [in the amount of $10,000], on instructions of his said principal, contacted the plaintiff at a place close to her residence for the purpose of making an agreement and settling the claim which the mother of the child

might have against the defendants. [The father of the child had died prior to the accident. At the time of the accident, the plaintiff was married to her second husband, René Rivera.]

"3.—The said adjuster found the husband of the plaintiff, Mr. René Rivera, on the road, and the adjuster indicated to Rivera that he wished to talk to the plaintiff in order to discuss the said settlement.

"4.—René Rivera got the plaintiff and brought her to where the said adjuster was. The latter explained to both of them his mission, telling them that he was authorized to settle the claim they might have for the maximum amount of $1,000. He invited the plaintiff to discuss the matter with her husband, and the former withdrew to consult with her husband for 15 minutes; and after the couple had consulted among themselves, they accepted the offer, the plaintiff signing a document or release in the presence of Manuel A. Pérez, as a witness, who had known the plaintiff since she was a child, and in the presence of her husband. The adjuster thereupon delivered to the plaintiff a check for $1,000 in settlement of the said claim.

"5.—The plaintiff fully understood that a settlement for the death of her minor child was involved. She testified to the effect that she knew that she was receiving that sum for the death of her child, when she cashed the check.

"6.—In addition, the release was read to the plaintiff before she signed it in the presence of a witness, and she understood its contents. She signed it voluntarily, having previously advised with her husband, and the adjuster used no traps, deceit or machinations in order to obtain, as he did obtain, her consent. Before the aforesaid release was signed, the adjuster told the plaintiff that he was coming to bring her $1,000 because the company was not paying more and even if she (the plaintiff) went to Court she was not going to obtain more because a minor and not a head of a family had been killed.

"7.—Before and after the settlement was consummated, the plaintiff had ample opportunity not to carry it out, or if it were possible as a matter of law, to repudiate it. However, her conduct previous and subsequent to the consummation of the contract was an acceptance and ratification. She testified that after she signed the release and received the check, Manuel A. Pérez, the witness to her signature, told her that she had done something 'horrible' in settling, because they both believed

it was a small sum. However, the plaintiff kept the check for several days, and then cashed it at the bank. She also testified that 'in spite of the fact that her husband told her that they had given her very little money, she went to the bank and cashed the check.' And she also testified that after having invested the money in the purchase of a house, about four months later, she went to a lawyer in order to file the present suit." (Matter in brackets ours.)

On appeal, the plaintiff contends (1) that the trial court "committed an error of law and in the weighing of the evidence" in holding that the contract of settlement between the parties was valid, and (2) that the trial court erred in holding that by her subsequent conduct, particularly in cashing the check, the plaintiff ratified the settlement.

The first assignment of error requires us (1) to determine the facts and (2) once the facts are established, to examine the legal question of validity of the release under those facts. We therefore turn first to the problem of the facts.

It was stipulated at the trial that if certain witnesses testified their testimony would be to the effect that the child was killed due to the negligence of an employee of the Water Resources Authority in driving a truck belonging to the latter. The defendants offered no testimony on the issue of negligence. And they do not challenge the finding of the trial court that the child was killed as the result of the negligence of an employee of the Authority.

The only oral testimony heard by the trial court was that of Álvarez, the adjuster. The plaintiff had testified at a previous trial before a judge who resigned without deciding the case. The parties stipulated that the transcript of the plaintiff's testimony at the previous trial should be taken into consideration by the present trial judge. This created an unusual situation as there were certain conflicts between the testimony of Álvarez and that of the plaintiff as to the circumstances under which the release was executed. Álva-

rez denied he had told the plaintiff that the court would not award her more than $1,000 because a minor rather than the head of a family had been killed. But the trial court did not believe this testimony. Instead, it believed the stipulated testimony of the plaintiff that Álvarez had made this statement to her. The defendants do not challenge this finding of fact and we leave it undisturbed.

On the other hand, the trial court apparently resolved the other conflicts between the oral testimony of Álvarez and the stipulated testimony of the plaintiff in favor of Álvarez. The plaintiff testified that she did not consult her husband before she signed the release; that she told Álvarez she needed some time to consider the offer of settlement, but that Álvarez insisted she had to make up her mind immediately as he had to leave; that the release was not read to her before she signed it; and that she was nervous and almost crazy from having lost her child six days ago and consequently did not know what she was doing when she signed the release and accepted the check. The oral testimony of Álvarez supports the findings of fact of the trial court on these matters. We are unable to say that the trial court was compelled to reject Álvarez's oral testimony and instead to give credence to the plaintiff's stipulated testimony concerning these questions.

In view of the foregoing, we find no error by the trial court in the weighing of the evidence, except for one point which is hereinafter discussed. We therefore turn to that portion of the first assignment of error in which the plaintiff contends that, under the facts as found by the trial court, the release was invalid as a matter of law.

Finding of fact No. 6 contains the statement that "the adjuster used no traps, deceit or machinations" in order to obtain the plaintiff's consent to the release. This statement is in the shadowy area where it might be considered as both a finding of an ultimate fact and a conclusion of law. As a conclusion of law, we are of course not bound by it. Even

when we accept the findings of fact of the trial court, it is for this Court in the final instance to state the rule of law which is applicable to the facts. And treating it as a finding of an ultimate fact leads to the same conclusion: If the intermediate facts found by the trial court actually show deceit, the finding of the ultimate fact—that no deceit had occurred—cannot be permitted to stand. *De Soto* v. *Clínica Industrial*, 71 P.R.R. 820, 824; *Mercedes Bus Line, Inc.* v. *District Court*, 70 P.R.R. 656, 660–1; *Meléndez* v. *Metro Taxicabs*, 68 P.R.R. 709, 712–3. We must therefore determine whether or not the intermediate finding—that the adjuster told the plaintiff that " . . . he was coming to bring her $1,000 because the company was not paying more and even if she (the plaintiff) went to Court she was not going to obtain more because a minor and not a head of a family had been killed . . . " —requires a holding that the release was void as a matter of law.

The problem here is whether the release was void on the ground that it was obtained by deceit. One of the requisites for a contract is "[t]he consent of the contracting parties." Section 1213, Civil Code, 1930 ed. However, under § 1217, "[c]onsent given by error, under violence, by intimidation, or deceit shall be void." The deceit which vitiates consent is defined in the Civil Code as follows:

"Section 1221.—There is deceit when by words or insidious machinations on the part of one of the contracting parties the other is induced to execute a contract which without them he would not have made.

"Section 1222.—In order that deceit may give rise to the nullity of a contract, it must be serious, and must not have been employed by both of the contracting parties.

"Incidental deceit renders the party who employed it liable to indemnify for losses and damages only." [1]

The defendants do not now contend and have never contended that when the settlement was made, there was any

---

[1] See also § 1716 of the Civil Code.

reasonable doubt as to their liability to the plaintiff for the death of her child. Nor do they contend that the $1,000 offer of settlement was predicated in part on such a reasonable doubt. On the contrary, they did not challenge the stipulated testimony that the accident was due to the negligence of an employee of the Authority acting in the course of his employment. And Álvarez testified that he knew nothing about this case when he was instructed by telephone to proceed from Utuado, where he was investigating another case, to Jayuya; that he prepared the $1,000 check and corresponding release at Utuado before he left for Jayuya; that at the latter town he talked to the witnesses who were employees of the Authority and the physician who performed the autopsy before he saw the plaintiff and made the offer of settlement.

Because the record contains nothing whatsoever to support it, we reject the statement in finding of fact No. 4 of the trial court that the adjuster told the plaintiff and her husband that "... he was authorized to settle the claim they *might* have for the maximum amount of $1,000." (Italic ours.) Álvarez did not testify either that he thought or that he told the plaintiff her claim was debatable. Indeed, he did not testify as to what, if anything, his investigation had revealed as the cause of the accident, whereas at the trial the defendants admitted their liability. In his testimony Álvarez gave as his only reasons for making the offer of settlement for $1,000 (1) that he thought it was reasonable, and (2) that it was the maximum amount he was authorized to offer.

We therefore have a case of admitted liability in which an insurance adjuster six days after a six-year old child has been killed visits at her countryside home the mother who is virtually illiterate,[2] tells her the court would not award her more than $1,000 because the person killed was a minor and not the head of a family, and in a few minutes, after she has consulted only her similarly untutored husband,

obtains her signature in consideration of the payment of $1,000 to a release which the adjuster had prepared before he knew anything about the facts of the case.

We cannot agree with the trial court that under the circumstances of this case the statement of the adjuster to the plaintiff that in 1950, when this accident occurred, a court would not award her more than $1,000 was not "serious deceit" under § 1222 of the Civil Code and was the sort of exaggeration or "ordinary deception, easily verified . . . which take[s] place in the bazaar and the market place," see footnote 4, *infra*. On the contrary, we are of the view that the adjuster, who had had two years of experience in an "infinite" number of cases, knew that his statement was shockingly false; that he intended for the plaintiff to rely on his statement; and that the plaintiff—an ignorant, simple, country lady, who could not yet have felt completely normal only six days after this terrible accident—did rely on this false and fraudulent misrepresentation and was induced thereby to accept the adjuster's offer and to sign the release.

We think that the consent of the plaintiff was vitiated by the deceit practised on her and that the release was void. This case comes within the rule laid down by us in *Rivera v. Heirs of Díaz*, 70 P.R.R. 168. In the *Rivera* case we pointed out at p. 172 and at p. 174, footnote 6, that deceit has an exceedingly broad range and includes "deception, fraud, false representation and undue influence . . .".[3] We also quoted with approval at p. 172 the comment from Manresa reading as follows:

" 'The essence of this type of deceit is found in the fraud which obtains the consent of the deceived person, wringing it from him or at least influencing him. This is the meaning of the words "or insidious machinations" to which the statute

---

[2] It is not disputed that the plaintiff had only a first-grade education and that she could sign her name but could not read or write.

[3] *Cf. Rivera v. Heirs of Díaz, supra*, concurring opinion at p. 186.

refers and which encompass false promises, the exaggeration of hopes or benefits, *embezzlement,* misrepresentation of name, capacity *or power,* a thousand ways, in short, of deceit that may induce a contracting party, producing a vitiated consent . . .' Manresa, *Comentarios al Código Civil Español,* vol. 8, (2d ed. 1907), p. 657." (Italics ours.) [4]

The question of whether a release was obtained by deceit depends on the facts of each case. Our previous cases involving settlements of automobile accident cases therefore do not shed too much light on the specific problem before us. The general doctrines stated in them are in accord with the result we have reached in this case. In *Colón* v. *Méndez,* 41 P.R.R. 865, we affirmed a judgment in favor of a plaintiff in a suit for personal injuries. We upheld the action of the trial court in refusing to give effect to a release executed by the plaintiff in favor of the defendant. Our opinion disposes of this point in one paragraph at pp. 865–6 as follows:

"The release was executed some two weeks after the accident. Plaintiff was confined to his bed at the time and for two months or more thereafter. He could neither read nor write and at the time of the alleged agreement was unable to affix his mark thereto without assistance. The district judge found that the release had been obtained by fraud, misrepresentation, and deceit, and was of the opinion that the consideration was inadequate. We concur in this view. There was no meeting of minds and therefore no contract or agreement to be enforced."

An examination of the original record in this Court in the *Colón* case shows that the plaintiff received $40 for

---

[4] The quotation from Manresa in the text of this opinion applies to the facts of this case rather than the quotations on which the trial court relied, reading as follows: "The gravity of the deceit set forth in Section 1270, which is required in order to make a contract null, refers not to its influence but to its importance, that legal precept meaning that it is not sufficient to show ordinary deception, easily verified, and it excludes from the effects of deceit the small and usual deviations from the truth, almost inseparable, unfortunately, from transactions, especially those which take place in the bazaar and the market place. (8 Manresa *Código Civil* 426—Vol. II, 5th Edition.)"

executing the release and that he was finally awarded $400 for his injuries and $98 for wages he had failed to earn. The record also discloses that the plaintiff testified that the insurance agent told him the $40 covered only his maintenance and not his claim for injuries; the agent denied this testimony. While it is not wholly clear from the opinions of the trial court and of this Court, apparently the plaintiff's testimony on this point was believed and taken into consideration in support of the conclusion in the *Colón* case that the release was void.

In *De Jesús* v. *Singer Sewing Machine Co.*, 46 P.R.R. 694, we affirmed a judgment in favor of the defendant on the ground that the plaintiff had been contributorily negligent. We therefore found it unnecessary to examine the validity of a release executed by the plaintiff in consideration of the sum of $60. However, we warned in a dictum at p. 699 that "Acts of this nature, performed immediately after an accident has been suffered, with a needy person who is not advised by an attorney, should be closely scrutinized in order to prevent a party from obtaining an advantage from its fraudulent or illegal conduct and thus avoiding its liability...".

In *Agosto* v. *P. R. Express Co.*, 47 P.R.R. 853, we reversed a judgment in favor of the plaintiff as damages for the death of his seventeen-year old son as a result of an automobile accident. We held that the trial court erred in weighing the evidence and that the settlement and release therein were valid. But the only question presented in the *Agosto* case was whether the plaintiff had knowingly entered into a contract of settlement. The fact that a death case was being settled for only $650, was not in itself sufficient to vitiate the transaction, particularly as the insurance company was apparently claiming, perhaps with some basis, that the defendants were not liable for the accident. For present purposes, it is enough to quote the language of the *Agosto* case at p. 865 that "We find nothing in the instant case

that tends to show fraud on the part of Arias [the insurance agent] in order to enter into the contract of compromise agreed upon. The cases of *Colón* v. *Méndez*, 41 P.R.R. 865, and *De Jesús* v. *Singer Sewing Machine Co.*, 46 P.R.R. 694, cited by the appellant, have no application to the case at bar because the circumstances under which the compromise were [sic] entered into are different to those of the instant case." (Matter in brackets ours.)

We think that under the facts of this case the release in this case would be held void in most of the jurisdictions where the common law prevails. See Annotations, 121 A.L.R. 1270; 21 A.L.R. 2d 272; 164 A.L.R. 402; 48 A.L.R. 1462, supplemented in 117 A.L.R. 1022; 96 A.L.R. 1001; *Restatement, Contracts*, § 470 *et seq.; Restatement, Torts*, § 525 *et seq.;* Williston *On Contracts*, § 1486 *et seq.;* Prosser *On Torts*, p. 701 *et seq.; Dice* v. *Akron, C. & Y. R. Co.*, 342 U.S. 359; *Ricketts* v. *Pennsylvania R. Co.*, 153 F. 2d 757 (C.A. 2, 1946); *Sainsbury* v. *Pennsylvania Greyhound Lines*, 183 F.2d 548 (C.A. 4, 1950); *Whitehead* v. *Montgomery Ward & Co.*, 239 P.2d 226 (Ore., 1951); *Heuter* v. *Coastal Air Lines*, 79 A.2d 880 (N.J., 1951.) *Cf. Camerlin* v. *New York Central R. Co.*, 199 F.2d 698 (C.A. 1, 1952.)

 The second assignment of error attacks the conclusion of the trial court that by her subsequent conduct, particularly in cashing the check, the plaintiff ratified the settlement. The defendants cite § 1263 of the Civil Code in support of this conclusion of the trial court.[5] In view of the fact that she spoke only to people of her same background, we fail to see how under all the circumstances of

---

[5] Sections 1261 and 1263 read as follows: "The action of nullity is extinguished from the moment the contract may have been validly confirmed." "The confirmation can be made either expressly or in an implied manner. It shall be understood that there is an implied confirmation when, being aware of the cause of the nullity, and such cause having ceased to exist, the person who may have a right to invoke it should execute an act which necessarily implies his wish to renounce such a right."

302

this case the action of the plaintiff in cashing the check a few days after she received it constituted ratification of the settlement under § 1263. We rejected a similar argument in an analogous situation involving § § 1255 and 1256 of the Civil Code in *Rivera* v. *Heirs of Díaz, supra.* See *Union Pac. R. Co.* v. *Zimmer,* 197 P.2d 363, 368 (Cal., 1948); *Komer* v. *Shipley,* 154 F.2d 861, 865–6 (C.A. 5, 1946); *Whitehead* v. *Montgomery Ward & Co., supra,* 237. The trial court erred in holding that the plaintiff ratified the settlement by her subsequent conduct.

On the issue of the amount of damages, the only evidence before the trial court was the stipulated testimony of the plaintiff. It would therefore serve no useful purpose to remand the case for determination by the trial judge of the amount of the damages. Since we are in as good a position on this question as the lower court, we shall fix the damages in our judgment.

*For the reasons stated, the judgment of the Superior Court in favor of the defendants will be reversed and a new judgment will be entered granting the plaintiff damages in the amount of $12,000, costs and attorney's fees of $1,500, the sum of $1,000 already received by the plaintiff to be deducted from the amount awarded as damages.*

