Froessel, J. (dissenting).
We dissent and vote to affirm. We cannot agree with the majority opinion of the court both as to the jurisdictional and the section 29 issues. In their disposi *301 tion of the jurisdictional question, they flatly overrule Fitzgerald v. Harbor Lighterage Co. (244 N. Y. 132), thereby destroying the salient policy which it was designed to promote, at the same time raising a serious constitutional question as to the conflict between section 113 of the Workmen’s Compensation Law as here applied and the Federal Employers’ Liability Act. With regard to the section 29 issue, principles of law well settled by the decisions of our court have been ignored.
It will be helpful to set forth a rather full statement of the facts before consideration of the applicable law. The deceased employee, John D. Meachem, worked in the locomotive department of respondent New York Central Railroad at its. West Albany shops as a machinist and repairman. On November 7, 1945, while operating an electric switch in the regular course of his employment, he suffered severe shocks and burns. A duodenal ulcer resulted, and he became totally disabled. Meachem filed a claim for compensation benefits on December 21,1945. Respondent controverted the claim on the ground that ‘' causal relation between the condition * * * complained of and any accidental injury ” was lacking; and reserved “ the right to controvert for such other reasons as may later appear ”. Respondent railroad subsequently paid compensation for total disability in accordance with the ensuing award.
On February 24, 1948 Meachem was injured in an automobile ■accident. According to the board’s findings, he died on May 9, 1948 “of an internal hemorrhage due to perforated duodenal ulcer”. (Emphasis supplied.) The attending physician’s report states in greater detail: “ Shock ruptured gastric ulcer emergency operation April 30,1948 and secondary anemia, with secondary hemorrhage massive internal May 7th, patient expired May 9,1948 following second massive hemorrhage.”
On June 11, 1948 appellant, as widow, made application for death benefits to the Workmen’s Compensation Board. Respondent contested the claim on the ground that the automobile accident was the sole cause of death, and hence there did not exist a causal relationship between the industrial accident and the death. Respondent again reserved the right “ to controvert for such other reasons as may later appear Then, on February 23,1950 — several months after the decision of this court in Matter of Baird v. New York Cent. R. R. Co. (299 N. Y. *302 213, decided May 26, 1949) — respondent filed another notice, in which it announced its intention to controvert on the additional ground that the board was without jurisdiction since ‘' both employee and employer were engaged in Interstate Transportation on the date of this alleged injury and death”.
Prior to any determination by the board of the claim for death benefits, appellant, as administratrix of her husband’s estate, brought suit against the owner and operator of the automobile involved in the collision of February 24, 1948. She petitioned the Surrogate’s Court of Albany County for leave to compromise that action in the amount of $12,000. Her petitioning papers and the order of the Surrogate issued in connection therewith reveal that the action against the owner and operator of the automobile was to recover damages for " wrongful death ”, and also included a claim for “ conscious pain and suffering”. Those papers also show that as a result of the automobile collision appellant’s husband “ sustained severe and permanent injuries ” and “ that said injuries subsequently precipitated and contributed to his death ” (emphasis supplied). The Surrogate granted permission to settle the action on December 21,1949. In a subsequent order, the Surrogate apportioned the proceeds of the settlement among the decedent’s “wife and next of kin ” in proportion to “ the pecuniary injuries ” which they “suffered”. (Decedent Estate Law, §§ 132-133.) Respondent did not consent to the settlement of the action.
After such settlement, the Referee in this case held, on the authority of Matter of Baird v. New York Cent. R. R. Co. (299 N. Y. 213, supra), that the board lacked jurisdiction over the subject matter of the claim for death benefits — claimant’s attorney acknowledging that the Referee “ would have to be governed ” by the Baird case. This determination was reversed by the board, which held that respondent had “ waived and is estopped from raising the question of the jurisdiction of the Workmen’s Compensation Board, by its conduct in paying compensation pursuant to the New York law and in failing to raise the question of jurisdiction before the loss of the claimant’s right of action under the Federal Employers Liability Act.” (See Finding 7; emphasis supplied.) The italicized language was directly contrary to the evidence.
*303 Notwithstanding its findings that decedent “was totally disabled due to duodenal ulcer ” as a result of the 1945 industrial accident, and died “ due to perforated ulcer ” following the automobile accident, the board determined that ' ‘ The automobile accident was not interlinked with the industrial accident of November 7, 1945, and was not the cause of claimant’s death” (emphasis supplied). It was accordingly held that the compromise of the wrongful death action arising out of the automobile collision did not constitute a ‘' third-party settlement ” within the meaning of section 29 of the Workmen’s Compensation Law. After submission of a report by an impartial medical specialist, and a hearing de novo before a Referee, the board also held that causal relationship between the industrial accident and death existed.
The Appellate Division, in unanimously reversing the board, held that respondent was not estopped from raising the defense of lack of jurisdiction over the subject matter; and that the action for wrongful death came within the purview of section 29 of the Workmen’s Compensation Law.
Treating first with the jurisdiction question here presented, appellant’s husband, as previously noted, was engaged as machinist and repairman at respondent’s West Albany shops when he was injured in the course of his employment in November, 1945. In Matter of Baird v. New York Gent. R. R. Co. {supra) we held that workmen similarly engaged at respondent’s West Albany shops must seek redress for their industrial injuries under the Federal Employers’ Liability Act. Our Workmen’s Compensation Board was consequently ousted of its jurisdiction to hear and determine claims arising out of such accidents. However, section 113 of our Workmen’s Compensation Law-—-the constitutionality of which was upheld as applied in Matter of Ahern v. South Buffalo Ry. Co. (303 N. Y. 545, affd. 344 U. S. 367) —provides that “ the employer and the insurance carrier” may “waive their admiralty or interstate commerce rights and remedies
In the Fitzgerald case (244 N. Y. 132, supra) we dealt with a situation parallel to that at bar, also involving section 113 and the question of waiver thereunder. A workman had there filed a claim with the Industrial Commissioner and was awarded compensation for his disability. Payments were made by the *304 employer which the employee accepted. Over a year after his original claim was filed, the employee chose to pursue his Federal rights in an action for injuries under the maritime law. We construed the waiver provision of section 113, and held that such conduct did not constitute a waiver of Federal rights. The waiver contemplated by section 113, wrote Judge Cabdozo (244 N. Y., at p. 137), is one which “ imports ” in the “ setting of the context ” a ‘ ‘ concurrent evidence of intention having the force of an agreement to forego one set of remedies and abide by another ’ ’ . That ‘ ‘ intention ’’ to forego Federal remedies must be “ announced ” by “ all who must participate ”—namely, the claimant, employer, and insurance carrier—before the statute will be operative to confer jurisdiction on the board (id., pp. 136-137).
The salutary policy reasons which impelled the formulation of these rigid standards for waiver under section 113 are apparent : By maintaining such standards, an injured workman who may have filed a claim and accepted benefits under our Workmen’s Compensation Law would not be precluded thereby from instituting action under the Federal Employers’ Liability Act (FELA)—or any other relevant Federal act, as the case may be (e.g., The Jones Act, U. S. Code, tit. 46, § 688) —and recovering a verdict over and beyond the limited schedule of allowances afforded him under our Workmen’s Compensation Law.
As a direct result of the majority’s overruling of the Fitzgerald case, injured workmen who may henceforth mistakenly file claims for compensation under our Workmen’s Compensation Law and accept benefits before realizing their rights were governed by the FELA would be seriously prejudiced — deprived of a possible substantially higher recovery. This we cannot sanction. In our view, the standards of waiver propounded in Fitzgerald, and the policy effectuated thereby, should be preserved. Thus we would hold in the instant case that in the “ setting of the context ” here presented, neither the claimant nor the self-insured employer ‘ ‘ announced ” an “ intention ’ ’ to forego Federal remedies, thereby giving rise to the waiver contemplated by section 113. As was the case in Fitzgerald, filing a claim, appearance before the board, and acceptance of payments on decedent’s part did not amount to a declaration of an intention to waive.' And, similarly, the appear *305 anee and payment of disability awards by the self-insured employer herein did not constitute an announced intention to waive on the application for death benefits.
The Ahern decision {supra) did not, as the majority hold, broaden and liberalize the requirements for waiver under section 113. In that case, the carrier involved had participated in hearings before the board and made payments on a disability claim to the injured workman, as ordered by the board, for a period of four and one-half years, and first contested jurisdiction after that period of time had elapsed. Recovery under the FELA was then barred by the three-year limitation period prescribed therein (U. S. Code, tit. 45, § 56).
In view of those circumstances, this court in Ahern found it unnecessary to enforce the standards propounded in Fitzgerald since an equitable estoppel was clearly present — the FELA Statute of Limitations had run—and the case turned on that circumstance. The Supreme Court of the United States so construed the Ahern case, upholding the determination on the ground of equitable estoppel, pointing out that the limitation period had run and that we viewed “ these circumstances as estopping appellant ” (344 U. S. 367, 371-372, 373, supra).
Here, there is no evidentiary basis whatever for a finding of equitable estoppel. The carrier from the start—while the Baird litigation was proceeding through the courts—reserved the right to controvert for such other reasons as may later appear. Several months after Baird was decided, the jurisdictional defense was formally asserted on the basis of our decision in Baird; and at the time of this assertion of the defense, claimant was afforded nearly 15 months to institute action under the FELA.
Judge Foster in his opinion in the Appellate Division clearly showed that the FELA limitation period had not elapsed at the time that the jurisdictional defense was asserted by respondent (see discussion 7 A D 2d 253, 255-256; Dusek v. Pennsylvania R. R. Co., 68 F. 2d 131 [analyzing relevant Supreme Court cases]). The board had mistakenly held otherwise, and based its decision on a clearly erroneous finding of fact.
Concluding this discussion of the jurisdictional question, the impact of the majority’s decision in this case is to the following effect: The standards for waiver under section 113 of the Work *306 men’s Compensation Law are now being liberally construed for the benefit of a claimant who slept on her rights for nearly 15 months — during which period she could have instituted action under the FELA. As a result, the standards for waiver will henceforth be liberally applied in all cases, and, in consequence, workmen who may mistakenly file claims under our Workmen’s Compensation Law and accept benefit payments in ignorance of their rights will be barred from securing substantially greater recoveries under the FELA.
Turning next to the second issue involved on this appeal, the particular question presented is whether the wrongful death action brought by appellant against the owner and operator of the car involved in the 1948 accident constitutes a third-party action within the meaning of section 29. Holding that it is such an action would mean that appellant herein was entitled only to deficiency compensation in the first instance, and that she lost that right by virtue of the settlement of the third-party action without respondent’s consent, in violation of subdivision 5 of section 29 (O’Brien v. Lodi, 246 N. Y. 46, 51; Matter of Roth v. Harlem Funeral Car Co., 243 App. Div. 459, affd. 268 N. Y. 661).
Section 29 of the Workmen’s Compensation Law was designed to place the ultimate liability in damages for the loss sustained by the workman — or his dependents, as the case may be — on the third party who stands outside of the employer-employee relationship; to minimize the financial burden imposed upon the party liable for compensation and, at the same time, ensure a full—but only a single — recovery to the injured workman or his dependents. Thus section 29 grants to the party liable for compensation the benefit of any recovery or right of action, which may be had by the one injured or wronged, against the third party who is independently liable for the same wrong or injury as to which compensation is due (Matter of Parchefshy v. Kroll Bros., 267 N. Y. 410: Matter of Zirpola v. T. & E. Casselman, Inc., 237 N. Y. 367, 373; Caulfield v. Elmhurst Contr. Co., 268 App. Div. 661, 664, affd. 294 N. Y. 803; Employers Mut. Life Ins. Co. v. Refined Syrups & Sugars, 184 Misc. 941, 944-945, affd. 269 App. Div. 931). This benefit accrues to the party liable for compensation even though it may have in fact contributed to the injury of the workman by its own negligence *307 (Caulfield v. Elmhurst Contr. Co., supra-, Employers Mut. Life Ins. Co. v. Refined Syrups & Sugars, supra).
Appellant in this case concedes the fact — and, as appears from the petitioning papers and orders issued in the Surrogate’s proceedings, it is abundantly clear — that the third party against whom appellant brought suit contributed in some measure to her husband’s death. The wrong redressed by compromise of that wrongful death action was personal to appellant and her minor son, and was in reality not decedent’s death, or the physical injury caused to him, but rather the extinguishment of their means of support as a result of decedent’s death. For death per se or physical injury to decedent there could be no recovery in a wrongful death action. In consequence, the damages recovered by compromise of that action reflected the pecuniary loss sustained by appellant and her minor son as a result of decedent’s death (see Holmes v. City of New York, 269 App. Div. 95, 97-98, affd. 295 N. Y. 615).
This same analysis obtains for death benefits under the Workmen’s Compensation Law. Hence the death benefits awarded to appellant and her minor son by the board in this case were designed to recompense them, as dependents, for the pecuniary loss sustained as a result of decedent’s death (Workmen’s Compensation Law, § 16; see Matter of Schwabacher v. International Salt Co., 298 N. Y. 726, affg. 272 App. Div. 173). Respondent was charged with liability for the loss to the widow and son since it too, by reason of the industrial accident sustained on its premises, contributed to their decedent’s death.
The conclusion to be drawn from the foregoing is that two independent torts inflicted upon decedent by two parties coalesced to cause his death and thereby gave rise to a single wrong or injury—extinguishing support — to his widow and minor son-, and compensation under the Workmen’s Compensation Law was due for this single wrong from one party responsible, the employer, and an action for damages at law for the same single wrong lay against the third-party tort-feasor. It is unmistakably clear, therefore, that the right of action which appellant had against the third-party tort-feasor is within the purview of section 29. That section comes into operation where the one injured, as here, has a right of recovery against a third *308 party who is independently liable for the same single wrong as to which compensation is due. In such a situation, the party liable for compensation—here respondent — is granted the right to have its compensation burden minimized, and the ultimate responsibility in damages is placed on the third-party tortfeasor. Such is the law of this State. ‘‘ Untoward ’ ’ double recoveries — as Judge Foster stated (7 A D 2d, at p. 256) —such as that had by appellant for the single wrong done unto her is thereby also prevented (Matter of Parchefsky v. Kroll Bros., 267 N. Y. 410, 414, supra; Matter of Zirpola v. T. & E. Casselman, Inc., 237 N. Y. 367, 372-373, supra; see Matter of Schwabacher v. International Salt Co., supra).
Even aside from the statutory policy of section 29, under general common-law principles a single injury or loss may be redressed only once. “ The law does not permit a double satisfaction for a single injury” (Milks v. McIver, 264 N. Y. 267, 270; see, also, Barrett v. Third Ave. R. R. Co., 45 N. Y. 628, 635; Brooks v. Rochester Ry. Co., 156 N. Y. 244). And if a partial recovery is had against one party liable for the total loss, a recovery against another party also liable for the total loss is limited to the amount of the deficiency (see Knapp v. Roche, 94 N. Y. 329, 334; Sagan v. State of New York, 205 Misc. 435; Debtor and Creditor Law, §§ 231, 233).
The majority of this court has taken the position that since the automobile accident did not occur in the course of employment and was not contemporaneous with the industrial accident, the wrongful death action cannot be a third-party action within the meaning of section 29. In the first place, the plain language of section 29 does not impose any such requirements. The only conditions imposed by that section are: (1) “If an employee entitled to compensation under this chapter” (2) “be injured or killed by the negligence or wrong of another ” (3) “ not in the same employ ’ But, more important, the same argument was in substance advanced in the Parchefsky case (supra) and was there rejected and disposed of by this court (see 267 N. Y., at pp. 416-418). There is no authority for the position of the majority in this casó.
In Parchefsky a workman sustained a cut on his wrist in the course of his employment. At a subsequent time the injury was aggravated as the result of malpractice by a physician. We *309 held that under the Workmen’s Compensation Law the employer was liable for both the result of the original injury and the subsequent malpractice; and that if a recovery was had against the negligent physician in a common-law suit for the results of the malpractice, that recovery enures to the benefit of the employer, who then as a practical matter is liable only for the original injury apart from the results of the malpractice.
Judge Lehman, writing for the court, stressed the fact that our Workmen’s Compensation Law in such a case imposed liability on the employer for the ' ‘ ultimate results of the injury ’ ’ caused to the employee. But he added (267 N. Y., at p. 418): “ To the extent that the injury for which compensation may be made under the Workmen’s Compensation Law includes the result of malpractice [i.e., the subsequent and noncontemporaneous tort], the injury ’ is due to the negligence of the physician within the spirit and letter of the statute.” (Emphasis in original.) In other words, the recovery in such a case from the subsequent and noncontemporaneous tort-feasor, the physician, is a third-party recovery within the meaning of section 29. The fact that the tort of malpractice, or any other tort, is not contemporaneous with the industrial accident is of no moment.
In the instant case, the “ injury ” or wrong done to appellant was the extinguishment of her means of support. Compensation was due for that injury. However, a subsequent tort coalesced with the industrial accident to cause that injury; and both tort-feasors were independently liable for the same injury or wrong. Hence the award of benefits by the board in the instant case of necessity “included” and compensated appellant for the “ result ” of the subsequent and noncontemporaneous tort. The recovery had herein by appellant against the subsequent tort-feasor, therefore, squarely falls within the ambit of section 29, in accordance with the rule of the Parchefsky case {supra).
An additional ground supports our view. The automobile accident, or subsequent tort, herein involved unquestionably aggravated the industrially caused ulcer condition, and brought on decedent’s death. That was appellant’s position in the wrongful death action and in the proceedings before the Surrogate— in which the employer was deprived of participation. Section 459, Restatement, Torts, states: “If the negligent actor is liable for an injury to a part of another’s body which *310 renders it peculiarly susceptible to the harmful effect of later accidents, the actor is also liable for further harm sustained by such part in a subsequent accident, if such harm would not have been sustained had such part of the other’s body not been weakened by the actor’s negligence.” (Emphasis supplied.) (Accord: Conner v. City of Nevada, 188 Mo. 148, 161-162 [quoted and approved in Wagner v. Mittendorf, 232 N. Y. 481, 487].) When thus viewed, the instant case is exactly the same as the classic aggravation of injury case involving a malpracticing doctor, dealt with in Matter of Parchefshy v. Kroll Bros, (supra). We can find no distinction between inflicting a subsequent injury by a surgeon’s scalpel as in Parchefshy or by an automobile as here. And indeed a right of subrogation—which the majority hold is an essential prerequisite to the application of section 29—would be afforded the employer against the subsequent tort-feasor who aggravated the industrially .caused ulcer condition (267 N. Y. 410, 414).
To spell this out: The facts show that the industrial accident left decedent with an ulcer condition. This ulcer was ruptured or perforated as a result of the automobile accident, and decedent died in consequence thereof. Since the employer was responsible for the weakened condition which rendered decedent susceptible to the further harm, it is liable for the total loss. Similarly, the third party took his victim as he found him, and is also liable for the total loss, notwithstanding the fact that but for the ulcer — which he in no way caused — decedent would not have sustained a rupture or perforation thereof and died. In such a case, however, as in the classic subsequent aggravation of injury case involving a malpracticing doctor, the first tortfeasor who is liable for the entire loss is subrogated to the rights of the injured party against the subsequent tort-feasor who aggravated the original injury.
Any attempt, therefore, to distinguish Parchefshy (supra) factually, or on principle, is, in our opinion, clearly untenable. Here involved is a true third-party action, as contemplated by section 29, and claimant by settling that action without the consent of the employer prejudiced the latter’s rights.
Finally, as to the matter of the board’s finding that the automobile accident was not the cause of the husband’s death: Appellant herself has repudiated this finding—which as a mat *311 ter of law has no basis in the record—by conceding that both injuries caused her loss.
Accordingly, the order appealed from should be affirmed.
Judges Dye, Fuld and Burke concur with Chief Judge Desmond ; Judge Froessel dissents in an opinion in which Judge Van Voorhis concurs; Judge Foster taking no part.
Order reversed, etc.