709 S.E.2d 99

**Shane M. BEAN, Appellant,**

v.

**SOUTH CAROLINA CENTRAL RAILROAD COMPANY, INC., Respondent.**

No. 4802.

Court of Appeals of South Carolina.

Heard Nov. 4, 2010.

Decided March 2, 2011.

Rehearing Denied May 25, 2011.

---

538

W. Mullins McLeod, Jr., Sonaly K. Hendricks, and Ayesha T. Washington, all of Charleston, for Appellant.

John C. Millberg, of Raleigh, and James B. Richardson, Jr., of Columbia, for Respondent.

GEATHERS, J.

This is an appeal from a negligence action pursuant to the Federal Employer's Liability Act (FELA)[1] for personal injuries suffered by Shane Bean while working for South Carolina Central Railroad Company, Inc. (SCCR). The circuit court granted summary judgment to SCCR, noting Bean executed a valid release agreement that precluded all of his claims. In this appeal, Bean asserts numerous points of error, namely, that the circuit court erred in granting summary judgment to SCCR when (1) Bean presented evidence that the release was procured by fraud, the release was executed pursuant to a mutual mistake, and the release failed for lack of consideration; (2) Bean was not afforded a reasonable opportunity to conduct discovery essential to his claims prior to the grant of summary judgment; and (3) Bean presented evidence of SCCR's negligence as causing or contributing to his injury. We affirm.

## FACTS

Shane Bean suffered an on-the-job injury in August of 2004 when his boot slipped off the bottom step of a stationary locomotive while dismounting it, causing him to fall to the ground and injure his right knee.[2] Bean was subsequently diagnosed with a torn anterior cruciate ligament (ACL) in his right knee. Dr. Terence W. Hassler, the doctor who performed two surgeries on Bean's knee, signed a disability

---

1. 45 U.S.C. §§ 51 to –60 (2007). Under FELA, railroad carriers are liable to their employees for any injuries resulting, in whole or in part, from the employer's negligence. See 45 U.S.C. § 51.

2. Bean's complaint alleged the fall was due to oil and grease on the ground in the area where the locomotive was stationed. However, during his deposition, Bean admitted he was not looking down at his feet as he dismounted the locomotive and it was possible the accident was his own fault.

certificate on October 11, 2004, noting Bean was sufficiently recovered to return to work and resume a normal workload "as tolerated." Bean returned to work for SCCR and performed primarily engine duty until March 2005 with the assistance of a knee brace.

In March of 2005, Bean underwent ACL reconstruction surgery and took six months off to recover. In April of 2005, Bean suffered another injury when he fell off the front steps of his home while using crutches after a rain storm. Bean suffered a fractured right knee cap and underwent additional surgery. Bean remained on paid medical leave with SCCR until September of 2005, when he returned to work. SCCR paid all of Bean's medical bills and lost wages during his six-month medical leave.

On September 1, 2005, Dr. Hassler signed another disability certificate noting Bean was sufficiently recovered to return to work with the following limitations: "Engine Duty Only / No ground work for 6 mths." On September 29, 2005, Dr. Hassler issued a third disability certificate with the following limitation: "Engine Duty and light ground work only."

During his deposition, Bean explained he thought "light ground work" included dismounting the locomotive and aligning three to four switches during a tour of duty. When asked if Dr. Hassler specifically told Bean his restriction was permanent, Bean answered "He said that in order for my knee to last I would have to take care of it. He mentioned to me that one more fall, one more good fall would probably wipe my knee out for good." According to Bean, Dr. Hassler told him his restriction would continue "as long as nothing changed with my knee."

Upon returning to work for SCCR, Bean complained to Natalie Jones, the nurse representative employed by SCCR to handle his case, about his desire not to do any night work due to the increased tripping hazards. Jones spoke to SCCR management and Bean was transferred to daytime engine duty work within several weeks. Bean admitted his coworkers and supervisors at SCCR accommodated his restrictions and permitted him to perform only engine duty and light ground work.

Bean began settlement negotiations with Bill Monroe, a claims representative consultant for Rail America,[3] in June of 2006. Bean testified "at that time I thought that my best interest would be to play fair with the railroad and see what they had to say about the situation." Monroe told Bean he had the option of hiring an attorney, and Bean chose not to do so. Bean testified he chose not to hire an attorney because he believed "I would work with them, and they would hopefully work with me." Bean admitted SCCR management did not expressly tell him he should not hire an attorney, or threaten him with the loss of his job if he chose to hire an attorney.

However, Bean did contend that several days after the incident, John Atkinson, an SCCR Trainmaster and Bean's supervisor, took him to the Hartsville Army Navy store and bought him a pair of Oakley sunglasses. During this outing, Atkinson allegedly told Bean he could either hire an attorney and litigate his claim for several years, or he could settle with the railroad and return to work. Atkinson also told Bean he could probably get $50,000 from the railroad if he decided to settle his claim.

As a result of Bean's settlement discussions with Monroe, Bean executed a "General Release and Final Settlement" releasing SCCR from all claims of liability for his knee injury. Bean testified that prior to signing the release, he asked Monroe if SCCR knew he had a permanent restriction. Monroe allegedly told Bean that SCCR was aware of his permanent restriction and "they were willing to work with me on that, and accommodate me." According to Bean, Monroe also told him that the permanent work restriction language, i.e. light ground work and engine duty, "could not" be inserted into the release. Despite knowing the release contained no work restriction limitation language, Bean signed the release and accepted $75,000 from SCCR as part of the terms of the settlement.

After executing the release, Bean continued to work for SCCR for another ten months without incident or complaint. In mid-April of 2007, Bean left for vacation for a week and

---

3. Monroe was a senior claims manager with Railroad Risk Management, Inc., a company contracted by Rail America, the parent company of SCCR.

upon his return he noticed he had been assigned a conductor's job. Bean complained to Michael Rogers and John Atkinson, Trainmasters for SCCR, and informed them that he was on a permanent restriction and therefore could not work as a conductor. SCCR management asked Bean to secure a medical release from his doctor indicating whether he had any permanent medical restrictions. Bean visited Dr. Hassler again and allegedly produced a note to SCCR management stating his permanent work restriction, i.e. engine duty and light groundwork, had not changed.[4] According to Bean, Atkinson told him not to return to work until he had a full medical release. According to Rogers, SCCR management told Bean to go home until he could provide SCCR with a document clarifying his medical condition.

On May 10, 2007, approximately three weeks later, SCCR faxed Bean a "return-to-work" agreement providing as follows:

Shane Bean will return to work on Monday, May 14, 2007, under the restrictions of an extended light duty as instructed on the return to work release we received from Dr. Hassler on 09/29/05. [Bean] will be on engine duty with some light ground work. Light ground work meaning he is able and capable of getting off the engine to throw switches, make couplings, apply/release handbrakes, etc. [Bean] will also be able to work as a conductor in an emergency situation (lack of qualified persons, etc.) for a short term [SCCR] will make a reasonable effort to accommodate [Bean's] condition based on seniority. [SCCR] would require [Bean] to provide an update on his condition from his doctor every six months.

Bean testified he refused to sign this accommodation letter because the offer was "vague" with regard to how long he would be forced to work as a conductor. Bean never returned to SCCR, nor did he call to inform the company he was not coming back.

Bean applied for and accepted a job in Spartanburg two days after receiving the faxed work accommodation agreement from SCCR. Rogers sent Bean a letter on May 21, 2007,

---

4. The record on appeal does not contain any notes or disability certificates from Dr. Hassler in the year 2007.

noting he would be terminated for job abandonment if he did not return to work or contact SCCR management. Bean failed to respond or appear, and he was terminated after a hearing on May 24, 2007.

Bean filed a complaint on August 14, 2007, against SCCR for negligence under FELA and for violations of the Federal Railroad Safety Authorization Act.[5] In addition, Bean alleged fraud and negligent misrepresentation with respect to SCCR's statements and conduct in the execution of the release. SCCR filed a motion for summary judgment arguing the release executed by Bean precluded any personal injury claims against SCCR under FELA. SCCR further argued Bean was unable to demonstrate his injuries were caused by SCCR's negligence. Bean filed a memorandum in opposition to summary judgment arguing the release was invalid based on fraud, mutual mistake of fact, and lack of consideration.

Bean also filed an affidavit in opposition to SCCR's summary judgment motion noting "I provided John Atkinson a copy of Dr. Hassler's return to work form dated September 29, 2005 where he permanently placed me on engine duty only and light ground work." Bean further explained, "Under no circumstances would I have accepted [the $75,000 settlement] money if I knew the railroad would require me to work beyond my physical limitations as explained by Dr. Hassler and in essence take my job from me." With regard to why the permanent work restriction language could not be included in the release, Bean stated "I believed the reason it was not in the release is because I was already back to work. Therefore, there was no need to sign a get back to work form or have that language in the release." Finally, Bean concluded, "The railroad induced me to enter into the settlement under the promise and representation that I would get back to work and that they would accommodate my medical restrictions."

During the hearing on the summary judgment motion, Bean's counsel argued several material facts were in dispute, including whether Bean's work restriction was permanent or

5. Although Bean refers to this claim in his complaint as a violation of the Federal Railroad Safety Authorization Act, we note that this code section, formerly referred to as the Boiler Inspection Act, later became the Locomotive Inspection Act (LIA). *See* 49 U.S.C. § 20701 (2007).

temporary, and whether the release applied to Bean's employment claims in addition to his personal injury claims. The circuit court entered an order granting SCCR's motion for summary judgment on the grounds that the release was validly executed. The circuit court did not reach the issue of SCCR's negligence or Bean's request to conduct further discovery prior to the summary judgment ruling. Bean did not file a Rule 59(e), SCRCP, motion to alter or amend. This appeal followed.

## ISSUES ON APPEAL

1. Did the circuit court err in holding that fraud invalidating a FELA release may only be shown where the defendant railroad makes material misstatements meant to deceive an injured worker as to the contents of the release?

2. Did the circuit court err in granting summary judgment to SCCR when Bean presented evidence that the release was procured by fraud on behalf of SCCR?

3. Did the circuit court err in holding that a mutual mistake invalidating a FELA release may only be found when the mistake goes to the nature of the injury?

4. Did the circuit court err in granting summary judgment to SCCR when Bean presented evidence that the release was executed pursuant to a mutual mistake of the parties?

5. Did the circuit court err in granting summary judgment to SCCR when Bean presented evidence that the release failed for lack of consideration?

6. Did the circuit court err in granting summary judgment when Bean was not afforded a reasonable opportunity to complete discovery essential to challenging the validity of the release, proving defendant's liability, and opposing the motion for summary judgment?

7. Did the circuit court err in granting summary judgment when Bean presented evidence of SCCR's negligence as causing or contributing to his injury?

## STANDARD OF REVIEW

 Generally, a FELA action brought in state court is controlled by federal substantive law and state procedural law. *Norton v. Norfolk S. Ry.*, 350 S.C. 473, 476, 567 S.E.2d 851, 853 (2002). However, a local form of practice may not defeat a federal right. *Id.* It is firmly established that questions of the sufficiency of the evidence for the jury in cases arising under FELA in state courts are to be determined by federal rules. *Brady v. S. Ry.*, 320 U.S. 476, 479, 64 S.Ct. 232, 88 L.Ed. 239 (1943). A summary judgment motion involves analysis of the sufficiency of the evidence, and therefore federal law applies.[6] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (explaining that when determining whether summary judgment is appropriate, the judge's function is not to weigh the evidence and determine the truth of the matter, but to ascertain whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party"); *see also Peterson v. Nat'l R.R. Passenger Corp.*, 365 S.C. 391, 396–97, 618 S.E.2d 903, 905–06 (2005) (applying federal procedural law to an appeal of a summary judgment motion in a state FELA action).[7]

 Rule 56(a), FRCP, provides summary judgment is appropriate "if the movant shows that there is no genuine

---

6. Although not raised on appeal, we note the circuit court incorrectly cited South Carolina procedural law for the burden of proof to survive summary judgment in its order. Because the burden of proof to survive summary judgment in federal court is *more* than a scintilla of evidence, and the circuit court granted summary judgment applying the less stringent state standard of proof, this error of law is not determinative of the overall appeal. *See Brady*, 320 U.S. at 479, 64 S.Ct. 232; *accord Hancock v. Mid–South Mgmt. Co.*, 381 S.C. 326, 330, 673 S.E.2d 801, 803 (2009) ("[W]here the federal standard applies, ... there must be *more* than a scintilla of evidence in order to defeat a motion for summary judgment.") (emphasis added).

7. We note that our supreme court applied South Carolina procedural law to a summary judgment motion in a FELA action in *Montgomery v. CSX Transp., Inc.*, 376 S.C. 37, 47, 656 S.E.2d 20, 25 (2008). However, this Court is bound by the subsequent *Hancock* decision, in which the supreme court clarified the burden of proof to survive a summary judgment motion in state cases applying federal law. *Hancock*, 381 S.C. at 330–31, 673 S.E.2d at 802–03; *accord Brady*, 320 U.S. at 479, 64 S.Ct. 232.

dispute as to any material fact and the movant is entitled to judgment as a matter of law." The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. *Id.* at 248, 106 S.Ct. 2505. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. 2505 (internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. 2505; *Brady*, 320 U.S. at 479, 64 S.Ct. 232 ("The weight of the evidence under the Employers' Liability Act must be more than a scintilla before the case may be properly left to the discretion of the trier of fact—in this case, the jury."); *accord Hancock*, 381 S.C. at 330–31, 673 S.E.2d at 803 ("[I]n cases applying federal law, we hold that the non-moving party must submit more than a mere scintilla of evidence to withstand a motion for summary judgment.").

In addition, a challenge to the validity of a release under FELA raises a federal question to be determined by federal rather than state law. *Dice v. Akron, Canton & Youngstown R.R.*, 342 U.S. 359, 361, 72 S.Ct. 312, 96 L.Ed. 398 (1952). "One who attacks a settlement must bear the burden of showing that the contract he has made is tainted with invalidity, either by fraud practiced upon him or by a mutual mistake under which both parties acted." *Callen v. Pennsylvania R.R.*, 332 U.S. 625, 630, 68 S.Ct. 296, 92 L.Ed. 242 (1948).

## *LAW/ANALYSIS*

### I. AVAILABILITY OF SUMMARY JUDGMENT IN A FELA ACTION

The first issue Bean raises on appeal is whether summary judgment was improper because a challenge to the validity of

a release precluding a railroad employee's FELA claims is a question of fact that must always be submitted to a jury.[8] We disagree that a FELA case must always be submitted to a jury when an employee challenges the validity of a release.

 "Despite its great utility in many kinds of litigation, the motion for summary judgment is not well adapted to cases under FELA." 11 Am.Jur. *Trials* § 397 (1966). "This does not mean that the motion is never available." *Id.* Particularly with regard to negligence claims brought by an employee against a railroad, there is a federal policy in favor of jury trials when there is evidence to support negligence in a FELA action. *See Millner v. Norfolk & W. Ry.*, 643 F.2d 1005, 1010 (4th Cir.1981); 11 Am.Jur. *Trials* § 397 (1966) ("Summary judgment is almost always unavailable on the issue of negligence."). "The right to trial by jury is a basic and fundamental feature of our system of federal jurisprudence." *Bailey v. Central Vermont Ry.*, 319 U.S. 350, 354, 63 S.Ct. 1062, 87 L.Ed. 1444 (1943) (citations and quotations omitted). "It is part and parcel of the remedy afforded railroad workers under the [Federal] Employers' Liability Act." *Id.* "To deprive these workers of the benefit of a jury trial in close or doubtful cases is to take away a goodly portion of the relief which Congress has afforded them." *Id.*

Notwithstanding this strong federal policy in favor of jury trials when there is any evidence to support a negligence claim, the South Carolina Supreme Court affirmed the grant of summary judgment in a FELA action in *Peterson v. Nat'l R.R. Passenger Corp.*, 365 S.C. 391, 401–02, 618 S.E.2d 903, 908 (2005) (affirming the grant of summary judgment to a railroad when there was insufficient evidence of negligence on the railroad's behalf).

We next turn to address the narrower issue of whether summary judgment is appropriate when an employee challenges the validity of a release in a FELA action. The Fourth

8. We note that this issue was not included in Bean's Statement of the Issues on Appeal. Therefore, we need not address this argument on the merits. *See* Rule 208(b)(1)(B), SCACR ("Ordinarily, no point will be considered which is not set forth in the statement of the issues on appeal."). However, because this issue is pertinent to the disposition of the overall appeal, we proceed to address the merits.

Circuit has cited *Dice v. Akron, Canton & Youngstown R.R.*, 342 U.S. 359, 72 S.Ct. 312, 96 L.Ed. 398 (1952), for the proposition that the issue of whether an employee is entitled to rescind a release due to fraud is "triable to a jury as of right." *Millner*, 643 F.2d at 1010. Therefore, an analysis of *Dice* is warranted here.

In *Dice*, a railroad employee claimed the release he signed was void and subject to recession due to fraud because he signed it relying on the railroad's deliberately false statement that the document was only a receipt for back wages. 342 U.S. at 360, 72 S.Ct. 312. The issue of fraud in the execution of a release was properly submitted to a jury based on conflicting evidence, and the jury returned with a verdict in the employee's favor. *Id.* at 363, 72 S.Ct. 312. However, the trial court entered a judgment notwithstanding the verdict, applying Ohio law on the issue of fraud. *Id.* at 360, 72 S.Ct. 312. The United States Supreme Court reversed, noting the trial court erred in applying Ohio state law to a FELA release, and in taking away the jury's verdict for the employee "when the issues of fraud had been submitted to the jury *on conflicting evidence . . . .*" *Id.* at 363, 72 S.Ct. 312 (emphasis added). *Dice* was not an appeal from the grant of summary judgment, and there is no language in *Dice* implying summary judgment may not ever be granted in a FELA action when the employee challenges the validity of a release.

In addition, none of the federal cases Bean relies upon for supporting authority expressly hold a challenge to the validity of a FELA release *must* be submitted to a jury, even in the absence of any genuine issue of material fact. The cases Bean cites only suggest that between a judge and a jury, any disputed factual issues should be determined by a jury. *See Maynard v. Durham & S. Ry.*, 365 U.S. 160, 163, 81 S.Ct. 561, 5 L.Ed.2d 486 (1961) (reversing the grant of a motion for a nonsuit when a genuine issue of fact existed as to whether the amount paid by a railroad to its employee was consideration for the release or mere payment for back wages); *Dice*, 342 U.S. at 363–64, 72 S.Ct. 312 (reversing a judgment notwithstanding the verdict when the issue of fraud in the execution of a release was properly submitted to a jury on conflicting evidence, and the jury returned with a verdict in the employee's favor); *Callen v. Pennsylvania R.R.*, 332 U.S. 625, 628–

29, 68 S.Ct. 296, 92 L.Ed. 242 (1948) (finding the circuit court erred in charging the jury that a release was valid and binding when conflicting evidence was presented during trial as to whether a mutual mistake of fact existed when the release was executed); *Counts v. Burlington N. R.R.,* 952 F.2d 1136, 1140–41, 1144 (9th Cir.1991) (finding a new trial was warranted when the trial court incorrectly charged the jury on the law for invalidating a release and an issue of fact was raised as to whether there was a mutual mistake of fact in the execution of the release); *Turner v. Burlington N. R.R.,* 771 F.2d 341, 344–45 (8th Cir.1985) (noting railroad's equitable counterclaim for specific performance of a settlement agreement was properly submitted to a jury, and not triable to the court, in light of FELA's policy of providing railroad workers the benefit of a jury trial); *Millner,* 643 F.2d at 1009–10 (finding motion to dismiss was improperly granted when disputed facts existed regarding whether the employee's counsel had express authorization to accept the terms of a proposed settlement offer).

None of the cases Bean cites involved an appeal from the grant of summary judgment. However, the First Circuit analyzed Dice with respect to a summary judgment appeal in *Camerlin v. New York Cent. R.R.,* 199 F.2d 698, 703 (1st Cir.1952). The *Camerlin* court noted: "We take it as an *a fortiori* conclusion from the majority opinion in *Dice* that on a complaint in a federal district court under [FELA], if there are any genuine issues of fact relevant to the validity of a purported release, such issues are to be determined by the jury, not by the trial judge." *Camerlin,* 199 F.2d at 703 (internal citations omitted). The First Circuit recognized that "if the release was binding on the plaintiff, even accepting the truth of his version of the facts, as recited in his deposition, then the case was a proper one for summary judgment." *Id.* at 703. However, the employee in *Camerlin* alleged he was led to accept a $950 settlement upon the mistaken assumption that his rights were limited by the New York Workmen's Compensation Act. *Id.* Based on this mistake of law, the First Circuit noted summary judgment was inappropriate. *Id.* at 703–04.

In both *Dice* and *Camerlin,* and in the other authority Bean relies upon for support, a genuine issue of material fact was in dispute with respect to the validity of a release. The

existence of a factual dispute regarding the validity of a FELA release precludes summary adjudication by a judge without a jury trial. However, when there is no genuine issue of material fact in dispute, summary judgment is not precluded solely because a case involves a challenge to the validity of a FELA release.

We recognize upholding a grant of summary judgment in a FELA case is not the general trend in federal case law. However, at least one federal court has granted a railroad's summary judgment motion after the employee challenged the validity of a release. *Heston v. Chicago & N.W. Ry.*, 341 F.Supp. 126, 128 (N.D.Ill.1972) (granting a railroad's summary judgment motion where an employee agreed to execute a release despite his alleged mistake of fact as to the exact future effects of a present injury that was fully known to him at the time of settlement to be of a permanent, painful, and serious nature).[9] Based on this opinion and also on the First Circuit's reasoning in *Camerlin*, we do not believe a challenge to the validity of a release necessarily precludes the grant of summary judgment in a FELA action. *See Camerlin*, 199 F.2d at 703.

As discussed below, there is no genuine issue of material fact in dispute with regard to the validity of Bean's release. Bean testified he was told SCCR would "work with" him to accommodate his injury. This vague remark does not rise to the level of an affirmative misrepresentation or mistake of fact as to the contents of the release. Furthermore, Bean's testimony alone does not constitute more than a mere scintilla of evidence required to survive summary judgment in a FELA action. *See Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *Brady*,

---

9. Two other federal courts have granted summary judgment in unreported opinions despite an employee's challenge to the validity of a FELA release: *Larson v. Burlington N. and Santa Fe Ry.*, 2004 WL 692259, at *7 (D.Minn.) (finding a railroad was entitled to summary judgment on an employee's claims when the railroad's misrepresentations went to the method used to calculate the settlement amount, and not to the contents of the release itself); *Church v. Burlington N. R.R.*, 1990 WL 114580, at *2 (N.D.Ill.) (granting summary judgment for the defendant railroad when an employee claimed he was told it was company policy for the railroad to "take care of its employees," noting this vague remark was insufficient to establish any affirmative promise made on the railroad's behalf).

320 U.S. at 479, 64 S.Ct. 232; *accord Hancock,* 381 S.C. at 330–31, 673 S.E.2d at 803. Therefore, we hold summary judgment was appropriate under the facts of this case.

## II. VALIDITY OF THE FELA RELEASE

■ "FELA releases may be set aside on the grounds of fraud, lack of consideration, and mutual mistake." *Counts,* 952 F.2d at 1142 (internal citations omitted). Bean raises all three grounds for rescinding the release in this appeal. Therefore, we will address each ground in turn.

### A. Fraud

The first ground Bean raises for setting aside the release is fraud. Bean alleges the circuit court erred in granting summary judgment to SCCR when he presented evidence that Monroe and SCCR management fraudulently induced him to sign the release. Specifically, Bean contends Monroe failed to fully explain his FELA rights, despite Monroe's knowledge that Bean was not represented by counsel. Bean further argues that Monroe misrepresented the scope of the claims being released. Finally, Bean submits Monroe's assertion that his employment restrictions "could not" be put in the release was a material misstatement concerning the contents of the release. We disagree on all points.

■ Under FELA, "a release of rights . . . is void when the employee is induced to sign it by the deliberately false and material statements of the railroad's authorized representatives made to deceive the employee *as to the contents of the release." Dice,* 342 U.S. at 362, 72 S.Ct. 312 (emphasis added). Fraud is generally found when the railroad misrepresents the extent or scope of a release, or when the railroad presents the release as an entirely different type of document. *See id.* at 360, 363, 72 S.Ct. 312 (finding a general release was void as a matter of federal law when the employee relied on the employer's deliberately false statement that the document he signed was nothing more than a receipt for back wages); *Fournier v. Canadian Pacific R.R.,* 512 F.2d 317, 318–19 (2d Cir.1975) (holding the district court erred in granting summary judgment to a railroad on the issue of a general release's validity where the release was presented to the employee as

one applying only to his claim for back wages). *But cf. Larson v. Burlington N. and Santa Fe Ry.*, 2004 WL 692259, at *7 (D.Minn.) (finding in an unreported opinion that a railroad was entitled to summary judgment on an employee's FELA claims when the railroad's misrepresentations went to the method used to calculate the settlement amount, and not to the contents of the release itself).

As to Bean's allegation of a fraudulent oral promise made by SCCR with respect to his future employment duties, the facts of *Camerlin* are sufficiently similar and warrant discussion. 199 F.2d at 700–01. In *Camerlin,* the district court granted the railroad's motion for summary judgment and the employee appealed. *Id.* The district court arguably declined to consider an affidavit the employee filed with the court after his deposition. *Id.* at 701. The affidavit contained an oral promise by the claims agent of a lifetime job upon the employee's return to work. *Id.* The First Circuit held that this alleged promise was not relevant to any material fact, and, therefore, any error in excluding it was not prejudicial. *Id.* The *Camerlin* court further explained:

> If the release were otherwise valid and binding, it could not be avoided on account of the railroad's subsequent nonfulfillment of this oral promise allegedly made by the claim agent in the course of negotiations leading to the settlement. It is not asserted that the parties meant to include this oral promise in the written contract of settlement, and that it was omitted therefrom by mutual mistake. . . . Nor do the above-stated allegations in the affidavit make out a case of fraud on the agent's part in the sophisticated sense that the agent procured the plaintiff's execution of the release in part by making an oral promise which he then and there had no intention to fulfill, or which he knew the railroad would not fulfill. The mere fact that the railroad subsequently did not give plaintiff a lifetime job is not, without more, a basis for inferring as a fact that the claim agent made the promise in bad faith, misrepresenting his then state of mind.

*Id.* However, the railroad in *Camerlin* also misled the employee to think the maximum amount he was entitled to recover under FELA was limited by the New York Workmen's Compensation Act. *Id.* at 703. Therefore, the First Circuit re-

versed the award of summary judgment on the basis of this latter misrepresentation, calling it a "mistake of law." *Id.* at 703–04.

■ Even taking Bean's allegations as true, Bean does not allege any fraud *as to the contents of the release.* Monroe allegedly told Bean that SCCR was willing to "work with" Bean to accommodate his permanent restrictions. The language of the release does not address Bean's future employment duties, nor does it state whether Bean's injury was of a permanent nature. Like the oral promise in *Camerlin,* the purported fraud here relates only to an extrinsic statement Bean alleges was made by Monroe in order to induce him to sign the release. During his deposition, Bean admitted he knew the agreement itself did not contain any language about a permanent work restriction before signing it.

In addition, the extrinsic oral agreement was not deliberately false or made to deceive Bean. Once Bean voiced a complaint about his expected employment duties in April of 2007, SCCR asked Bean to secure a disability certificate indicating whether his release was permanent. SCCR's request implied it was willing to abide by such a certificate. In fact, as demonstrated by the "return-to-work" agreement Rogers faxed to Bean, SCCR was indeed willing to accommodate Bean's medically recommended work restrictions. The faxed work agreement provided "[Bean] will be on engine duty with some light ground work," which is the exact limitation language contained in Bean's medical disability certificate. The "return-to-work" agreement further noted "[SCCR] will make a reasonable effort to accommodate [Bean's] condition based on seniority."

The record reflects that SCCR did attempt to "work with" and accommodate Bean's injury. Furthermore, we believe testimony about a vague remark that SCCR would "work with" Bean does not rise to the level of an affirmative misrepresentation made by the railroad as to the contents of the release. *See Church v. Burlington N. R.R.,* 1990 WL 114580, at *2 (N.D.Ill.) (granting summary judgment for the defendant railroad in an unreported opinion when an employee claimed he was told it was company policy for the railroad to "take care of its employees," noting this vague remark was insuffi-

cient to establish any affirmative promise made on the railroad's behalf).

Bean submits Monroe's statement that his work limitations "could not" be included in the release does go to the contents of the release. Bean suggests this was a false representation made to deceive Bean as to the contents of the release. We disagree. Bean conceded during his deposition that the only purported misrepresentation Monroe made to him was whether the railroad knew he had a permanent work restriction and whether SCCR would honor that restriction. At no point during Bean's deposition did he suggest that he believed he was not releasing his employment claims because of the absence of this language in the release. Stated differently, Bean did not ever allege that SCCR intentionally excluded any employment claim language from his release in order to deceive him as to his future employment claims. Indeed, Bean admitted in his affidavit that he believed the reason this language was not included in the release was because he was already back to work. In addition, no dispute about Bean's work duties arose until April of 2007. Therefore, this argument is unfounded.

■■■ Finally, Bean contends the release was induced by fraud because Monroe failed to fully explain his FELA rights, despite Monroe's knowledge that Bean was not represented by counsel. We note that this argument is not preserved for review because Bean failed to make this specific fraud argument to the circuit court or raise it in a Rule 59(e), SCRCP, motion to alter or amend. *See Doe v. Doe*, 370 S.C. 206, 212, 634 S.E.2d 51, 54 (Ct.App.2006) ("To preserve an issue for appellate review, the issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial court."); *id.* at 212, 634 S.E.2d at 54–55 ("Therefore, when an appellant neither raises an issue at trial nor through a Rule 59(e), SCRCP, motion, the issue is not preserved for appellate review.").

Accordingly, Bean failed to present more than a scintilla of evidence as to the allegation that the railroad made deliberately false and material statements intended to deceive him as to the contents of the release.

## B. Mutual Mistake of Fact

The second ground Bean raises on appeal for setting aside the release is a mutual mistake of fact. Specifically, Bean argues summary judgment was inappropriate because a mutual mistake of fact existed that was material to the release at the time the release was executed. We disagree.

A FELA release may be set aside on the basis of a mutual mistake of fact in executing the release. *See Callen v. Pennsylvania R.R.*, 332 U.S. 625, 630, 68 S.Ct. 296, 92 L.Ed. 242 (1948). "One who attacks a settlement must bear the burden of showing that the contract he has made is tainted with invalidity ... by a mutual mistake *under which both parties acted.*" *Id.* (emphasis added). "In order to rescind or invalidate [a FELA] release, it is necessary to show a mistake concerning past or present facts material to the agreement; a mistake as to the future effect of presently known facts will not affect the validity of the agreement." *Heston*, 341 F.Supp. at 128.

Initially, Bean argues the circuit court erred in finding a release may only be set aside when the mutual mistake goes to the nature of the injury. This argument misconstrues the circuit court's order. The circuit court found: "No mutual mistake existed between the parties." Therefore, the language of the order was not expressly limited to a mistake of fact as to the nature of plaintiff's injury.

Bean has failed to meet his burden of proof to demonstrate a mutual mistake of fact in existence at the time the release was signed. There are several reasons why Bean's mutual mistake argument must fail. First, Bean's belief about the permanency of his injury was at best a unilateral mistake of fact, as opposed to a mutual mistake of fact. SCCR management was unclear as to whether Bean was permanently or temporarily injured, while Bean believed he was permanently injured. *Cf. Callen*, 332 U.S. at 628–29, 68 S.Ct. 296 (finding enough evidence of a mutual mistake of fact to submit the issue to a jury when both the employee and the railroad were under the mutual mistaken belief that the employee was not permanently injured, and the parties arguably settled on that basis); *Counts*, 952 F.2d at 1141 (finding evidence of a mutual mistake of fact when both the employee and the

railroad were under the mutual mistaken belief that the employee would lose his guaranteed job protection if he returned to another position with the railroad, and the release contained language releasing all future employment claims against the railroad).

Second, the evidence in the record does not support Bean's assertion that he had a permanent disability. Bean stated his injury was permanent based on "Dr. Hassler's return to work form dated September 29, 2005 where he permanently placed me on engine duty only and light ground work." However, the disability certificate dated September 29, 2005, states the following limitations, "Engine Duty and light ground work only." The certificate does not mention whether the injury is permanent or temporary. During Bean's deposition, he admitted Dr. Hassler told him his work restrictions would continue "as long as nothing changed with my knee." This statement does not indicate a permanent injury unlikely to change.

Third, Bean cannot demonstrate a mutual mistake of fact that existed at the time the release was signed. The dispute concerning Bean's work limitations did not arise until April of 2007, which was approximately ten months after the release was signed. Further, no evidence in the record indicates the parties intended to include Bean's work limitations in the release, yet omitted the language by mutual mistake. At best, the evidence demonstrates a mutual mistake as to the future effects of a presently known medical condition. Federal case law has found this type of mistake of fact insufficient to void a release. *See Heston,* 341 F.Supp. at 128.

Lastly, even assuming both parties held the same mistaken belief about the permanency of Bean's injury, that belief was not material to the release because the release contains no language regarding the nature of Bean's injury or its effect on his future employment duties with SCCR. *See Heston,* 341 F.Supp. at 128; *Camerlin,* 199 F.2d at 700–01. Bean knew that the release contained no language to this effect when he signed it.

Bean also argues because the release mentions nothing about Bean's future employment with SCCR, a jury could find the parties were operating under a mutual mistake of fact

as to whether Bean released his employment claims along with his personal injury claims. We disagree. There is no evidence in the record demonstrating SCCR intended for Bean to retain his right to sue for employment-related claims, and yet omitted this language from the release by mutual mistake. In addition, neither Bean's deposition testimony nor his affidavit suggest Bean believed he had retained the right to sue for future employment-related claims.

The release language applies to "all claims which I have or may hereafter have, for personal injuries, known or unknown, and/or *loss of any* kind resulting or in any way arising from an accident which occurred at or near Darlington, South Carolina on or about August 21, 2004." (emphasis added). The release is entitled "General Release and Final Settlement." Based on the broad language of the release, and the corresponding lack of evidence to contradict this language, Bean has not met his burden of proof to demonstrate a mutual mistake of fact regarding whether the release applied to future employment-related claims.

Accordingly, Bean did not present more than a scintilla of evidence to demonstrate a mutual mistake of fact in existence at the time the release was signed.

### C. Lack of Consideration

The third and final ground Bean raises for setting aside the release is lack of consideration. Bean argues a genuine issue of material fact existed as to whether the release was supported by adequate consideration, thereby precluding summary judgment. Specifically, Bean contends he would not have accepted the $75,000 or signed the release had he known SCCR would not accommodate his work restrictions. Bean further alleges $75,000 was a nominal sum for a permanent injury that subsequently resulted in the loss of his employment. Therefore, Bean submits the oral agreement with respect to Bean's future employment duties was the material inducement for signing the release, and once the oral agreement failed, there was a lack of consideration for the release rendering it invalid. We disagree.

"In order that there may be consideration, there must be mutual concessions." *Maynard v. Durham & S. Ry.,*

365 U.S. 160, 163, 81 S.Ct. 561, 5 L.Ed.2d 486 (1961) (citations and quotations omitted). "A release is not supported by sufficient consideration unless something of value is received to which the creditor had no previous right." *Id.* "If, in other words, an employee receives wages to which he had an absolute right, the fact that the amount is called consideration for a release does not make the release valid." *Id.*

In *Maynard*, the employee claimed the check he received in exchange for a release of his FELA rights was actually a pay check, rightfully owed to him. *Id.* at 161–62, 81 S.Ct. 561. The employer claimed no back wages were due and an amount equal to back wages was paid in exchange for the release. *Id.* at 162–63, 81 S.Ct. 561. The United States Supreme Court found a genuine issue of material fact existed with respect to whether the employee received consideration that precluded summary judgment. *Id.* at 163, 81 S.Ct. 561.

Bean admittedly received a check in the amount of $75,000 from SCCR in return for releasing any and all claims related to his knee injury. Bean received these funds in addition to wages and medical expenses. During settlement discussions, Monroe offered Bean $50,000, and Bean made a counteroffer for $100,000. The parties settled on $75,000 after two settlement meetings. Bean purchased two cars and made upgrades to his home with the settlement proceeds. Bean does not argue he had any preexisting right to these settlement proceeds. Therefore, the $75,000 was a material inducement to signing the release. *See Counts*, 952 F.2d at 1140 (holding a release was supported by adequate consideration and the issue should not have been submitted to a jury when the employee admittedly received $70,423 in addition to his wage entitlement in exchange for signing the release).

In addition, Bean received consideration because the oral promise Bean allegedly relied on in signing the release was subsequently fulfilled. SCCR did attempt to "work with" Bean to accommodate his medical restrictions as noted by Dr. Hassler. The faxed "return-to-work" agreement provided Bean would be on "engine duty with some light ground work." Therefore, no genuine issue of material facts exists as to whether the release should be void for lack of consideration.

 Finally, Bean argues $75,000 was a nominal sum for a permanent injury. We note this issue has been abandoned on appeal because Bean cites no case law in support of this argument. *Mulherin–Howell v. Cobb*, 362 S.C. 588, 600, 608 S.E.2d 587, 593–94 (Ct.App.2005) (finding an issue was deemed abandoned on appeal when appellant cited no legal authority to support the argument and the argument itself was merely conclusory). In addition, the entire argument on appeal consists of a single sentence. *Englert, Inc. v. Netherlands Ins. Co.*, 315 S.C. 300, 304 n. 2, 433 S.E.2d 871, 873 n. 2 (Ct.App.1993) (finding a one-sentence argument was too conclusory to present any issue on appeal). Therefore, we need not address whether $75,000 constitutes a nominal sum.

## III. OPPORTUNITY FOR DISCOVERY

 We next turn to address Bean's argument that he was not afforded a reasonable opportunity to complete discovery essential to SCCR's summary judgment motion before the hearing on the motion.

This argument is not preserved for this court's review. Although the parties discussed the possibility of additional discovery at the summary judgment hearing,[10] the circuit court did not rule on Bean's discovery argument in its order granting summary judgment and Bean did not file a Rule 59(e), SCRCP, motion asking the circuit court to rule on the issue of insufficient discovery. Therefore, the question of whether summary judgment was proper in light of Bean's desire to complete further discovery is not preserved for this court's review. *See Doe v. Doe*, 370 S.C. 206, 212, 634 S.E.2d 51, 54 (Ct.App.2006) (holding that to preserve an issue for appellate review, the issue must have been raised to and ruled upon by the trial court); *id.* at 212, 634 S.E.2d at 54–55 ("Therefore, when an appellant neither raises an issue at trial nor through a Rule 59(e), SCRCP, motion, the issue is not preserved for appellate review.").

---

10. In addition, Bean's counsel asked for a ruling on the merits during the summary judgment hearing, thereby conceding that additional discovery was not needed prior to ruling on summary judgment.

## IV. NEGLIGENCE

The final argument Bean raises on appeal is whether summary judgment was inappropriate because there was a genuine issue of material fact in dispute as to whether SCCR was negligent in causing or contributing to Bean's injury. The circuit court did not address the issue of SCCR's negligence in its order granting summary judgment, and Bean did not file a Rule 59(e), SCRCP, motion to obtain a ruling on this issue. Therefore, the issue of SCCR's negligence was not preserved for appellate review. *See Doe v. Doe,* 370 S.C. 206, 212, 634 S.E.2d 51, 54 (Ct.App.2006) (holding that to preserve an issue for appellate review, the issue must have been raised to and ruled upon by the trial court); *id.* at 212, 634 S.E.2d at 54–55 ("Therefore, when an appellant neither raises an issue at trial nor through a Rule 59(e), SCRCP, motion, the issue is not preserved for appellate review.").

Accordingly, the order granting summary judgment is

**AFFIRMED.**

THOMAS and PIEPER, JJ., concur.