**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Rory M. Isaac and Kimberly J. Isaac, Appellants,

v.

Thomas C. Onions, Jacqueline Onions, Laura Kopchynski, and Lane's Professional Pest Elimination, Inc.,

Of Whom Laura Kopchynski is the Respondent.

Appellate Case No. 2019-001822

Appeal from Georgetown County
Benjamin H. Culbertson, Circuit Court Judge

Unpublished Opinion No. 2023-UP-263
Heard November 15, 2022 – Filed July 12, 2023

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**

George W. Redman, III, of Bellamy, Rutenberg, Copeland, Epps, Gravely & Bowers, P.A., of Myrtle Beach, for Appellant.

Steven Raymond Kropski, of Earhart Overstreet, LLC, of Charleston, for Respondent.

**PER CURIAM:**  Appellants Rory Isaac and Kimberly Isaac (the Isaacs) contend the circuit court erred in granting summary judgment to Respondent Laura Kopchynski (Kopchynski).  We affirm in part, reverse in part, and remand.

When attempting to sell their home in Pawleys Island in 2018, Thomas (Thomas) and Jackie (Jackie) Onions (collectively, the Onionses) turned to their friend Kopchynski to handle the sale.  A "Residential Property Condition Disclosure Statement" was signed by the Onionses on April 23, 2018.  Kopchynski said she played a minimal role in completing the form because she is "not allowed to advise, instruct, consult, [or] explain a disclosure form."

The disclosure asks homeowners to "[d]escribe any known present wood problems caused by termites, insects, wood destroying organisms, dry rot[,] or fungus."  The Onionses answered: "NONE."  Another space provided for those filling out the form to note why they might have replied "yes" to any question or to "further describe notice/known issues."  This space includes the handwritten notation: "SEE REPAIR VERIFICATION," followed by the Onionses' initials and a date of "6/20/2018."  The Isaacs signed the form on June 20.[1]

The disclosure was first filled out by the owners in anticipation of the sale of the home to Randy and Suzanne Cole, who signed a contract in early May to purchase the home.  An inspection report by Cornerstone Home Inspection of SC, LLC, conducted for the Coles and dated May 10, made note of moisture issues in the crawlspace.

According to Jackie, after receiving the Cornerstone report, she spoke to Kopchynski, who contacted Andy Ward with Stark Exterminators.  On May 16, Stark Exterminators visited the property to speak to the Onionses about a "Crawl Space Moisture Management System."  Kopchynski was at the Onionses' home that day.  Jackie and Ward dispute whether he told her the house would receive a clean CL-100, or South Carolina Wood Infestation Report, as long as one was done soon.

The Onionses decided to get repairs done by Emery Custer, a neighborhood handyman.  Kopchynski testified that she did not know what work Custer performed.  A repair verification form, dated May 25, 2018, was prepared to document Custer's work.  It was signed by the Onionses.  Kopchynski later testified that she did not

---

[1] The Disclosure specifically indicates that it "does not limit the obligation of the purchaser to inspect the property," and separately notes that it "is not a warranty by the real estate licensees" and "is not a warranty by the owner."

know before the litigation that the repair verification was typed by Thomas Onions. Thomas testified that he typed up the verification based on Custer's handwritten version, though he conceded he "probably paraphrased it." Custer said he first saw the typed verification at his deposition.

On June 18, the Coles and the Onionses signed a release from their contract. The next day, Kopchynski emailed Ed Kimbrough, the real estate agent for the Isaacs, to inform him that the house was back on the market. She notified Kimbrough of some of the documentation available and wrote: "CL-100 was done yesterday and from what I understand it was good, but I can obtain the report if/when necessary as the sellers paid for it."[2] The CL-100 in question, conducted on June 18 by an employee of Lane's Professional Pest Elimination, Inc., actually found evidence of "[n]on-active wood-destroying fungi" because the moisture level was between twenty and twenty-five percent. Kimbrough testified that he did not want that CL-100 because the Isaacs intended to have their own prepared. However, Kimbrough suggested he might have asked to review it if Kopchynski had represented it differently. Additionally, Kopchynski sent two versions of the "verification" of Custer's work to Kimbrough on the afternoon of June 20, 2018, the first lacking a header and the Onionses' signatures.

The Isaacs signed a contract to buy the home on June 20. The Isaacs were aware of the Cornerstone report, but Rory Isaac said he "depended upon . . . [the] truthfulness and accuracy" of a positive CL-100.

In a June 21 text conversation, Jackie texted Kopchynski to say: "reality of life but now I need to get ahold of Emery and ask him to come[, ] what do you think after 11:00[? ] He is going to move the fan and make the mesh door for the vent and I do not want him here working while they are walking through[.]" Kopchynski responded: "Maybe you can tell him after 11:30 just to be on the safe side and that you can call him if they leave earlier if he's in the neighborhood [and] wants to come earlier? I agree he should not be there[.]"

A new CL-100, prepared on behalf of Joseph Sheheen of Lane's on July 11, 2018, indicated that there were no signs of fungi and listed a moisture content

---

[2] Kopchynski herself seems to be unclear on when precisely she read the earlier CL-100. At the very least, she conceded that she did not read the CL-100 "that closely" before saying it was good. (" . . . I was told before reading this that it was good.").

between eight and eighteen percent.[3]  Sheheen said the Onionses were the only ones there when he looked at the crawlspace for the CL-100.

Two days after closing,[4] according to the Isaacs' complaint, "[w]hile [the Isaacs] were out of state on July 25, 2018, their landscape contractor called to inform them that rainfall had resulted in standing water around the house which appeared to be flowing into the crawl space of the residence on the Property."

Another CL-100, completed August 7, 2018, and filled out by Brantley C. Russell of Arrow Exterminators,[5] found evidence of both kinds of wood-destroying fungi.  The moisture level was clocked at twenty-seven to thirty-two percent.

On November 16, 2018, the Isaacs filed a complaint against Kopchynski, the Onionses, and Lane's.  Relevant to this appeal, they included claims against Kopchynski for (1) fraud, fraud in the inducement, and/or misrepresentation; (2) negligent misrepresentation; (3) civil conspiracy; and (4) violation of the Residential Property Disclosure Act.  Kopchynski answered on December 19, 2018, denying the substantive allegations and asserting 18 affirmative defenses.  On July 8, 2019, she filed a motion for summary judgment.

The circuit court held a hearing on July 26, 2019.  The court said it would grant Kopchynski's motion because "as I read the statute, she did what she was supposed to do."  In its August 9, 2019 written order, the circuit court found that "it is undisputed that Kopchynski disclosed the June 18, 2018 CL-100 report to the Isaacs' realtor[] and offered to obtain the report for the Isaacs."  It also noted Kimbrough's testimony that he and the Isaacs were determined to do their own CL-100.  The court stated: "Accordingly, the Isaacs cannot satisfy the elements of Fraud or Negligent Misrepresentation as they relied upon their own CL-100."  The court also found that the Isaacs could not make a claim based on information in the July 11 CL-100 because of S.C. Code Ann. § 40-57-350(G) (Supp. 2022), which shields real estate licensees from liability related to certain reports.  As to the conspiracy claim, the court relied on "deposition testimony from [a Lane's] inspector stating that he does not know Kopchynski and has not talked to her."  The court continued: "In response, Plaintiffs do not identify any evidence showing collaboration between the Defendants to conceal an alleged adverse property condition."

---

[3] Given those moisture readings, Sheheen testified, the CL-100 should have stated that there were no fungi present under "state standards."
[4] According to the circuit court, closing was July 23, 2018.
[5] Arrow and Stark appear to be the same company.

The Isaacs submitted at least three filings that could be placed under the umbrella term of Rule 59(e) motions. The circuit court denied the Isaacs' Rule 59(e) motion filed August 12, 2019, with a Form 4 order on September 25, 2019. This appeal followed.

All courts view summary judgment the same: "the appellate court applies the same standard of review as the trial court . . . ." *Cowburn v. Leventis*, 366 S.C. 20, 30, 619 S.E.2d 437, 443 (Ct. App. 2005). This means that "summary judgment may be affirmed if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Id.* Our task is not to attempt to divine the truth on a motion for summary judgment. *See Chastain v. Hiltabidle*, 381 S.C. 508, 514, 673 S.E.2d 826, 829 (Ct. App. 2009) ("A court considering summary judgment makes neither factual determinations nor considers the merits of competing testimony."). To the contrary, "all inferences from the facts in the record must be viewed in the light most favorable to the party opposing the summary judgment motion." *Manning v. Quinn*, 294 S.C. 383, 385, 365 S.E.2d 24, 25 (1988).

Appellants suggest that the governing standard for overcoming a motion for summary judgment in this case is the existence of a "mere scintilla" of evidence. However, in a trial on the facts, fraud must be found by clear and convincing evidence. *See McLaughlin v. Williams*, 379 S.C. 451, 456, 665 S.E.2d 667, 670 (Ct. App. 2008). This, in turn, increases the quantum of evidence required to defeat a motion for summary judgment to "more than a mere scintilla of evidence." *Hancock v. Mid-S. Mgmt. Co.*, 381 S.C. 326, 330–31, 673 S.E.2d 801, 803 (2009) ("[I]n cases requiring a heightened burden of proof or in cases applying federal law, we hold that the non-moving party must submit more than a mere scintilla of evidence to withstand a motion for summary judgment."); *see also Dunes W. Golf Club, LLC v. Town of Mt. Pleasant*, 401 S.C. 280, 298, 737 S.E.2d 601, 610 (2013) (applying "more than a mere scintilla" standard for denying summary judgment in a case requiring a showing of clear and convincing evidence to the trier of fact).

The Isaacs contend that the circuit court erred by granting Kopchynski's motion for summary judgment. We agree in part, but affirm the circuit court as to the fraud and conspiracy claims.

The "essential elements to establish liability for negligent misrepresentation" include:

> (1) the defendant made a false representation to the plaintiff; (2) the defendant had a pecuniary interest in making the statement; (3) the defendant owed a duty of

care to see that he communicated truthful information to the plaintiff; (4) the defendant breached that duty by failing to exercise due care; (5) the plaintiff justifiably relied on the representation; and (6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance upon the representation.

*AMA Mgmt. Corp. v. Strasburger*, 309 S.C. 213, 222, 420 S.E.2d 868, 874 (Ct. App. 1992). "Proof that the statement was made in the course of the defendant's business, profession, or employment is sufficient to show he has a pecuniary interest in making it, although he receives no consideration for it." *Id.* at 223, 420 S.E.2d at 874. In such cases, the defendant is obligated "to exercise that care a reasonable man would take in the circumstances." *Id.* Additionally, "[t]here is no liability for casual statements, representations as to matters of law, or matters which plaintiff could ascertain on his own in the exercise of due diligence." *Id.* Defendants also cannot be held liable for "[a] mere statement of opinion, commendation of goods or services, or expression of confidence that a bargain will be satisfactory." *Id.* at 222, 420 S.E.2d at 874.

Fraud, in addition to its heightened burden of proof, requires the following elements:

(1) a representation; (2) its falsity; (3) its materiality; (4) knowledge of its falsity or a reckless disregard for its truth or falsity; (5) intent that the plaintiff act upon the representation; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury.

*McLaughlin*, 379 S.C. at 456, 665 S.E.2d at 670 (quoting *Hendricks v. Hicks*, 374 S.C. 616, 620, 649 S.E.2d 151, 152–53 (Ct. App. 2007)). "The key difference between fraud and negligent misrepresentation is that fraud requires the conveyance of a known falsity, while negligent misrepresentation is predicated upon transmission of a negligently made false statement." *Id.* at 457, 665 S.E.2d at 670 (quoting *Armstrong v. Collins*, 366 S.C. 204, 219–20, 621 S.E.2d 368, 375–76 (Ct. App. 2005)).

For the purposes of this case, "[t]he elements of a civil conspiracy are (1) a combination of two or more persons, (2) for the purpose of injuring the plaintiff, (3)

and which causes the plaintiff special damage." *Island Car Wash, Inc. v. Norris*, 292 S.C. 595, 600, 358 S.E.2d 150, 152 (Ct. App. 1987).[6]

Additionally, the Residential Property Condition Disclosure Act (the Act) specifies what information must be disclosed to potential buyers by the owner of a home. *See* S.C. Code Ann. § 27-50-10 to -110 (2007 & Supp. 2022). Under the Act, a buyer is entitled to information concerning "present infestation of wood-destroying insects or organisms or past infestation, the damage from which has not been repaired[.]" S.C. Code Ann. § 27-50-40(A)(4) (2007 & Supp. 2022). However, a real estate agent "is not liable to a purchaser if: (1) the owner provides the purchaser with a disclosure form that contains false, incomplete, or misleading information; and (2) the real estate licensee did not know or have reasonable cause to suspect the information was false, incomplete, or misleading." S.C. Code Ann. § 27-50-70(B) (2007). Finally, legislation regulating licensed real estate brokers addresses a broker's disclosure of information concerning real property. For example, section 40-57-350(G) provides:

> (1) A licensee shall treat all parties honestly and *may not knowingly give them false or misleading information* about the condition of the property which is known to the licensee. A licensee is not obligated to discover latent defects or to advise parties on matters outside the scope of the licensee's real estate expertise. Notwithstanding another provision of law, no cause of action may be brought against a licensee who has *truthfully disclosed to a buyer a known material defect*.

> (2) No cause of action may be brought against a real estate brokerage firm or licensee by a party for *information contained in reports or opinions prepared by an engineer, land surveyor, geologist, wood destroying organism control expert, termite inspector, mortgage broker, home*

---

[6] In *Paradis v. Charleston County School District*, our supreme court overruled a line of cases including *Island Car Wash* to the extent they imposed a requirement of pleading and proving special damages. *See* 433 S.C. 562, 574, 861 S.E.2d 774, 780 (2021). However, the court held that its clarified formulation would not affect any other cases then currently on appeal, such as the present case. *See id.* at 577, 861 S.E.2d at 781.

> *inspector, or other home inspection expert, or other similar reports.*
>
> (3) A licensee, the real estate brokerage firm, and the broker-in-charge are not liable to a party for providing the party with false or misleading information if that information was provided to the licensee by the client or customer and *the licensee did not know the information was false or incomplete.*

S.C. Code Ann. § 40-57-350(G) (emphases added).

We do not read the Isaacs' complaint as an attempt to hold Kopchynski responsible for the information in the July 11 CL-100, but for her alleged *mischaracterization* of the findings of the June 18 CL-100.

State law does limit the liability of a licensee for misstatements on a disclosure form, but only if "the real estate licensee did not know or have reasonable cause to suspect the information was false, incomplete, or misleading." S.C. Code Ann. § 27-50-70(B)(2). There are reasons to believe Kopchynski *might* be *eligible* for this immunity. There are also reasons to believe that she *might* be *ineligible*. On a motion for summary judgment, we are not supposed to weigh that evidence and are instead required to consider it in the light most favorable to the Isaacs. *See Chastain*, 381 S.C. at 514, 673 S.E.2d at 829 ("In determining whether any triable issues of fact exist, the evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party."); *see also Montgomery v. CSX Transp., Inc.*, 376 S.C. 37, 47, 656 S.E.2d 20, 25 (2008) ("[E]ven if there is no dispute regarding the evidentiary facts, but only as to the conclusions or inferences to be drawn from them, summary judgment should be denied."), *modified on other grounds by Hancock*, 381 S.C. at 330–31, 673 S.E.2d at 802–03, *as recognized in Bean v. S.C. Cent. R. Co.*, 392 S.C. 532, 545 n.7, 709 S.E.2d 99, 106 n.7 (Ct. App. 2011).

Based on the record before us, the Isaacs presented enough evidence for two of their claims to survive summary judgment.

The Isaacs have presented the following evidence: (1) Kopchynski's position with the community newsletter, which increased the likelihood that she was aware of flooding issues in the neighborhood; (2) Kopchynski's knowledge of the earlier conditions in the Onionses' crawlspace and the Onionses' decision to hire Emery Custer rather than someone with more specialized knowledge; (3) the fact that

Kopchynski could have known from a plain reading of the June 18 CL-100 that it was not "good," or should have corrected her mistaken impression once she became aware; (4) testimony indicating that she sent two distinct versions of the Emery Custer work "verification" to Kimbrough; and (5) the text conversation between herself and Jackie. Given this evidence, a jury could rationally infer Kopchynski had reasonable cause to suspect the Onionses were not being truthful, and should have shared that with the Isaacs. *See Chastain*, 381 S.C. at 514, 673 S.E.2d at 829 ("In determining whether any triable issues of fact exist, the evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party."); *see also Montgomery*, 376 S.C. at 47, 656 S.E.2d at 25 ("[E]ven if there is no dispute regarding the evidentiary facts, but only as to the conclusions or inferences to be drawn from them, summary judgment should be denied.").

We need not find the evidence presented so far is determinative; simply that it is either a scintilla or more than a scintilla. *See Gibson v. Epting*, 426 S.C. 346, 352, 827 S.E.2d 178, 181 (Ct. App. 2019) ("[A] scintilla is a perceptible amount. There still must be a verifiable spark, not something conjured by shadows.").

As to negligent misrepresentation, the evidence before the court could reasonably be interpreted by a jury to show that (1) Kopchynski made a false representation to the Isaacs about the condition of the house; (2) she had a pecuniary interest in making that statement, as she was seeking as part of her job to sell the home; (3) she owed a duty of care to communicate truthful information under section 40-57-350(G)(1); (4) she breached that duty by implying that the June 18 CL-100 was "good" without either reviewing it or more closely reviewing it; (5) the Isaacs, through their agent, relied on that representation in declining to ask to review the June 18 CL-100; and (6) that led to the Isaacs' loss, and foreseeably so. *See AMA Mgmt. Corp.*, 309 S.C. at 222, 420 S.E.2d at 874 (listing elements).

Likewise, considering the claims related to the Onionses' disclosure, we find there is at least a scintilla of evidence supporting a theory that Kopchynski "[knew] or [had] reasonable cause to suspect the information was false, incomplete, or misleading," S.C. Code Ann. § 27-50-70, based on her ability to read for herself the June 18 CL-100 that contradicted her suggestions that its results were good.

However, for the Isaacs' fraud claim to survive, we must find that there is *more* than a scintilla of evidence supporting the Isaacs' case. Because of the higher burden and the stricter elements of fraud, this claim falls short. We struggle to find a "verifiable spark" that Kopchynski knew the statements she made regarding the June 18 CL-100 were false or that she *recklessly* disregarded their falsity. *See*

*McLaughlin*, 379 S.C. at 456, 665 S.E.2d at 670 ("To survive a motion for summary judgment, [the non-moving party] must offer some evidence that a genuine issue of material fact existed as to each element of fraud and negligent misrepresentation."); *id.* (listing elements).

The Isaacs' conspiracy claim also fails. We find no evidence in this record that would allow us to conclude that there is a genuine issue of material fact on whether there was the necessary "combination of two or more persons." *Island Car Wash, Inc.*, 292 S.C. at 600, 358 S.E.2d at 152; *see also* 15A C.J.S. *Conspiracy* § 30 (May 2023 update) ("To satisfy the requirement that a conspiracy to commit a fraud be pleaded with particularity, the plaintiff must allege with *sufficient factual detail* an explicit or tacit agreement by pleading *specific facts that support such an inference of an agreement*.") (emphases added) (footnote omitted); *Island Car Wash, Inc.*, 292 S.C. at 601–02, 358 S.E.2d at 153 ("[I]n order to establish a conspiracy, evidence, direct or circumstantial, must be produced from which a party may reasonably infer the joint assent of the minds of two or more parties to the prosecution of the unlawful enterprise. Proof showing *concert of action* in the commission of the unlawful acts, from which the natural or reasonable inferences arise that the acts were in furtherance of the common design of the alleged conspirators, is sufficient; at least to establish a *prima facie* case of conspiracy." (citing an earlier version of 15A C.J.S. Conspiracy § 30)).

Our jurisprudence has at times suggested it is difficult for the purchaser to prove a right to rely on misstatements by real estate agents and owners because of the right to have a home inspection performed. *See McLaughlin*, 379 S.C. at 459, 665 S.E.2d at 671 (finding that where a purchaser "had knowledge that directly contradicted the representations found in the Disclosure Statement . . . as a matter of law, he failed to establish the necessary element of reliance for his claims of fraud and negligent misrepresentation"); *accord Buchanan v. Improved Properties, LLC*, 7 N.E.3d 634, 642 (Ohio Ct. App. 2014) ("A buyer cannot justifiably rely upon any representations of the seller when the purchase is contingent upon an inspection.").

The Isaacs did not forego the right to inspect; the Isaacs possessed a home inspection conducted for a previous potential buyer, as well as assurances that the issues uncovered in that home inspection had been fixed. Additionally, the July 11 CL-100, obtained on their behalf prior to closing, indicated there were no issues with fungi.

Based on the foregoing, we reverse the circuit court's summary judgment order as to the Isaacs' claims for negligent misrepresentation and violation of the

Residential Property Disclosure Act, but we affirm the order as to the Isaacs' claims for fraud and conspiracy.

As to the Isaacs' other grounds for appeal, we need not address them with regard to claims we have already found should not have been subject to summary judgment. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating that the "appellate court need not address remaining issues when disposition of prior issue is dispositive" (citing *Whiteside v. Cherokee Cnty. Sch. Dist. No. One*, 311 S.C. 335, 340, 428 S.E.2d 886, 889 (1993))).

To the extent the additional grounds for appeal apply to the claims that we have not already reversed, we find that they were either unpreserved or abandoned on appeal.

With regard to the claims concerning the lateness of a memorandum supporting Kopchynski's motions for summary judgment, the Isaacs cite only a supreme court order regarding such filings. They also raise what appears to be an unrelated argument under Rule 54(b), SCRCP. They offer no authority interpreting the supreme court order. Further, it appears that the Isaacs did not raise the Rule 54(b) argument until they filed one of their Rule 59(e) motions. "A party cannot for the first time raise an issue by way of a Rule 59(e) motion which could have been raised at trial." *Patterson v. Reid*, 318 S.C. 183, 185, 456 S.E.2d 436, 437 (Ct. App. 1995).

As to the discovery issue, the Isaacs offer two paragraphs and one citation. Even if this issue is preserved in the strictest sense, the Isaacs have not offered enough specificity on what they hope to discover. *See Dawkins v. Fields*, 354 S.C. 58, 69, 580 S.E.2d 433, 439 (2003) ("Nonetheless, the nonmoving party must demonstrate the likelihood that further discovery will uncover additional relevant evidence and that the party is 'not merely engaged in a "fishing expedition." ' " (quoting *Baughman v. American Tel. and Tel. Co.*, 306 S.C. 101, 112, 410 S.E.2d 537, 544 (1991))).

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

**GEATHERS and MCDONALD, JJ., and HILL, A.J., concur.**